66 N.J. Super. 358 (1961)
169 A.2d 195
WILLIAM H. MASON, PLAINTIFF-RESPONDENT,
v.
CHARLES NIEWINSKI, ET AL., DEFENDANTS, AND DAVID GOLDFARB, T/A TWENTIETH CENTURY CAB CO., DEFENDANT-APPELLANT.
CHARLES NIEWINSKI, PLAINTIFF-RESPONDENT,
v.
DAVID GOLDFARB, DEFENDANT-APPELLANT, AND EDWIN MILLER, ETC., DEFENDANT. ALFONSO HENSHAW, PLAINTIFF-RESPONDENT,
v.
EDWARD OGBORNE, ET AL., DEFENDANTS, AND DAVID GOLDFARB, DEFENDANT-APPELLANT. EDWARD A. OGBORNE, PLAINTIFF-RESPONDENT,
v.
DAVID GOLDFARB, DEFENDANT-APPELLANT, AND CHARLES NIEWINSKI, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1961.
Decided March 23, 1961.
*360 Before Judges CONFORD, FREUND and KILKENNY.
*361 Mr. Howard A. Goldberger argued the cause for defendant-appellant Goldfarb in the action of plaintiff-respondent Niewinski v. Goldfarb (Messrs. Goldberger and Ostrow, attorneys).
Mr. Vincent D. Enright, Jr. argued the cause for defendant-appellant Goldfarb in the individual actions of plaintiffs-respondents Mason, Henshaw and Ogborne (Mr. Maurice J. McKeown and Messrs. McKeown, Harth and Enright, attorneys).
Mr. Myron W. Kronisch argued the cause for plaintiff-respondent Niewinski (Messrs. Roskein, Kronisch, Felzenberg and Mandell, attorneys).
Mr. Joseph S. Seidel argued the cause for plaintiffs-respondents Mason, Henshaw and Ogborne (Mr. Edward G. D'Alessandro, attorney for Mason; Mr. Sam Freeman, attorney for Henshaw; Mr. Milton Schleider, attorney for Ogborne; Mr. Norman Peterkin, of counsel and on the brief for said plaintiffs-respondents).
The opinion of the court was delivered by CONFORD, S.J.A.D.
These appeals arise out of four separate actions consolidated for trial, all involving a collision between a taxicab and an automobile near the intersection of Broad and New Streets, Newark, at about 1:45 A.M. on April 23, 1958.
The cab driver was Charles S. Niewinski, operating the vehicle under lease arrangement with David Goldfarb, trading as Twentieth Century Cab Co. He was driving north on Broad Street, in rainy weather, with two passengers, Mason and Henshaw, and was about to make, or had begun, a left turn into New Street, when the cab was struck by an automobile which was being driven south on Broad Street, operated by Edward Ogborne, employed by Apex Signal Service Company. All four individuals sustained personal injuries in the accident.
*362 There was testimony at the trial that before the collision the cab had veered to the southbound lanes of Broad Street between 10 and 40 feet south of the New Street intersection; also that the driver had just turned his head toward the passengers as though to join in a discussion going on between them. Niewinski testified that the steering wheel "snapped" and he lost control of the car.
The following actions were instituted in various courts: (a) by Mason against Niewinski, and against Goldfarb purportedly as the latter's employer, on the theory of Niewinski's negligence in the operation of the cab and Goldfarb's responsibility on the basis of respondeat superior, as well as against Ogborne and his employer, the Apex Company, for Ogborne's negligence; (b) by Henshaw against Niewinski, Goldfarb and Ogborne on the same theory as Mason's action; (c) by Ogborne against Niewinski and Goldfarb on the same theory as the Mason action; and (d) by Niewinski against Goldfarb and one Edwin Miller, doing business as D & G Auto Repair, for negligence in the repair of the "front end steering" of the cab, as a result of which the "steering mechanism broke" while plaintiff was operating the vehicle, causing a loss of control and the ensuing accident. The latter complaint was ordered amended in the pretrial order "to indicate Goldfarb is being sued individually as well as d/b/a." However, no amended complaint was ever filed stating the precise theory on which Goldfarb was being charged individually.
The pretrial order does not alter the theory of the Mason and Henshaw actions. (The Ogborne action was not pretried.) In respect of the Niewinski action, there is an amplification of facts in the pretrial order, but no essential change of the theory of negligent repairs insofar as Goldfarb and Miller as D & G Auto Repair is concerned. As to Goldfarb, individually, the order provides: "D. Goldfarb individ. was under a duty to exercise reasonable care to provide safe repair and maintenance of the said vehicle by providing for competent workmen or independent contractor, *363 by furnishing safe parts and materials, and by making reasonable inspections to assure the safety of persons who would be riding in the vehicle." It is then recited, inter alia, that "D & G" repaired the "front end steering" of the cab the day the cab was taken out by Niewinski and that "[t]he said repairs had been negligently made and Defs knew or should have known that the vehicle was not safe and that the steering mechanism was so poorly assembled as to be likely to break at any time." It is to be specifically noted that, although the lease agreement is mentioned in the order, no articulation of a theory of liability directly thereunder, e.g., as upon a warranty or covenant, as distinguished from negligence in the making of repairs, is expressed in the part of the order which purports to express the nature of the defendant's liability. Under paragraph 7, where the "legal issues raised by the pleadings as amended or to be amended which are to be determined at the trial" are required to be specified, R.R. 4:29-1(b) (7), and see Civil Procedure Form No. 29, there is set forth:
"7. Negligence, contrib. negligence, assumption of risk, acts of third party, agency, duty under contract of taxi rental, damages, notice of defect, liability of parties." (Emphasis added)
But the comprehensive description of the "consolidated actions" in paragraph 1 of the pretrial order is: "3 negligence suits arising out of an auto accident, alleging negligence in operation and repair of motor vehicle."
At the trial Niewinski was represented by his personal counsel in prosecution of his own action, but by an attorney of the insurance carrier for Goldfarb in his status as codefendant with Goldfarb in the other three actions. (Miller defaulted in pleading, but testified as a witness for Goldfarb.) Goldfarb was represented by personal counsel in defense of the Niewinski claim (as to which the carrier had disclaimed) and by the insurance counsel in defense of the other actions. Ogborne also had separate counsel, one *364 representing him as plaintiff and the other as defendant. The obvious possibilities for confusion and conflicting representation, enhanced by the inadequacy of the pleadings and pretrial order in defining the issues, bore their promised fruit.
After the court's charge to the jury, to which further reference will be made hereinafter, the jury returned unanimous verdicts in the Mason, Henshaw, Niewinski and Ogborne actions, respectively, as follows:
"Mr. Foreman: For item 1 we blame the accident on the faulty cab. We find against Goldfarb and as the result, Apex Signal Company and Ogborne in the clear. We find Charles Niewinski not negligent and we are awarding Mr. Mason the sum of $2,000.00.
For item 2, the faulty cab is again involved. Ogborne is in the clear and Charles Niewinski not negligent and we are allowing for Henshaw the sum of $1,500.00.
For item 3, we find that Charles Niewinski has a case against Mr. Goldfarb and we are awarding Mr. Niewinski $15,000.00.
For item 4, we find Mr. Charles Niewinski in the clear and that makes the case of Ogborne against Goldfarb, and we are awarding Mr. Ogborne $2,000.00."
The trial judge then molded the verdict as follows:
"* * * you find in favor of William H. Mason, against David Goldfarb and assess the damages at $2,000.00. I will mold your verdict to read a verdict in favor of Alfonso Henshaw against David Goldfarb in the sum of $1,500.00. I will mold the third verdict, which you rendered in favor of Charles Niewinski against David Goldfarb and assess damages at $15,000.00, and I will mold the verdict in the fourth case of Edward A. Ogborne against Goldfarb and assess the damages at $2,000.00. * * *"
A motion for a new trial on behalf of Goldfarb, in regard to the Niewinski action only, on grounds, among others, that the verdict was contrary to the weight of the evidence, "inconsistent or self-contradictory" and the result of mistake, passion, etc., was denied.
Goldfarb appeals all the verdicts returned against him. None of the parties has appealed the exculpation of Ogborne *365 as a defendant. In discussing the legal issues we will make such reference to the relevant factual proofs as is necessary.
We deal first with the appeal in respect of the Niewinski verdict. We have concluded that the cumulative effect of three aspects of the proceedings below raises a substantial doubt that justice was accorded Goldfarb at the trial and that it is in the interests of justice that there should be a new trial.

I.
Trial error is assigned in that the court improperly charged the jury that Niewinski might recover on a breach of warranty without negligence. After informing the jury that one ground of Niewinski's action was negligence by Miller and Goldfarb in the repair of the steering apparatus, the court charged that another allegation "arises out of a covenant or agreement in the lease * * * between Niewinski and Goldfarb." This the court paraphrased: "Goldfarb agreed to furnish Niewinski with a serviceably operating cab." If "he failed in that," said the court, Niewinski was entitled to recover for breach of warranty for the damages which "proximately flowed from the breach of contract." Although trial counsel for Goldfarb failed to take exception to the charge, it is now argued on his behalf that this instruction was so completely unfounded in the issues framed by the pleadings and pretrial order as to constitute plain error, particularly in view of the tenor of the verdict of the jury which "blame[d] the accident on the faulty cab."
The lease here in question calls for a daily rental of $9. It provides:
"The Owner agrees and covenants with the Lessee to make all necessary repairs and replacements, whether caused by collision, wear and tear or otherwise, at his, the Owner's own cost and expense."
(It will be noted that while this type of arrangement has been held to constitute an employer-employee relationship *366 for workmen's compensation purposes, see Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. 1958), Niewinski has been able to avoid the effect of that decision as Goldfarb served him with the statutory notice of election that the compensation act should not apply. R.S. 34:15-9.)
Beyond the foregoing there is no expression in the agreement concerning the condition of the vehicle.
It is perfectly clear to us that the lease language quoted did not necessarily, as a matter of law, constitute a warranty by the lessor to furnish the lessee with a "serviceably operating cab" such that merely showing the cab to have been in defective condition, ipso facto, and apart from negligence in maintenance or repair, would import liability for resulting injuries.
We are not here concerned with the question whether Goldfarb was subject to a general common-law duty of reasonable care to see to it that the motor vehicle furnished his bailee should be in safe operating condition. See Nelson v. Fruehauf Trailer Co., 11 N.J. 413, 417 (1953). Such a theory for recovery was neither framed by the pleadings or pretrial order nor argued below or before us. It is not encompassed by the Statement of Questions Involved in plaintiff's brief. As already indicated, the action was predicated solely on negligent repair of the vehicle. While there is language in the pretrial order which, taken in isolation from its context, would have, under a liberal reading (duty of "making reasonable inspections to assure the safety of persons who would be riding in the vehicle"), comported with the general tort obligation of a bailor for profit, plaintiff's claim, if any, under such a theory cannot be regarded as encompassed in the court's charge respecting warranty. Nowhere in the pleadings or pretrial order did plaintiff assert an absolute obligation under warranty to provide a "serviceably operating" vehicle. This having patently been one of the theories for recovery authorized by the charge of the court, defendant may well have been subjected to liability by the jury on a basis which he had *367 no fair reason to apprehend or defend against at the trial, insofar as the pleadings and pretrial order were concerned. See Mead v. Wiley Methodist Episcopal Church, 4 N.J. 200 (1950). Ordinarily, such procedure and result constitute plain error because denying substantial justice to the litigant. Ford v. Reichert, 23 N.J. 429, 434, 435 (1957).
The references in paragraph 7 of the pretrial order to issues of "duty under contract of taxi rental" and "liability of parties" do not suffice to lay a basis for the claim that an issue of warranty of serviceability had been tried. Such shorthand abbreviations of issues are not a satisfactory identification of a specific issue where they are not intelligible in the light of the pleadings or other parts of the order; e.g., in the recital of facts. Thus, while "negligence" is generally a sufficient signification of that issue, "duty under contract of taxi rental" is meaningless as a specification of issue expected to be understandable to parties in adverse interest and to the judges later dealing with the matter where there is no other clue in the pleadings or pretrial order as to just what it is claimed the "duty" consisted of (except, as to the instant case, negligence in making repairs). See Paradossi v. Reinauer Bros. Oil Co., Inc., 53 N.J. Super. 41, 48 (App. Div. 1958); Van Corp. v. Mayor and Council of Borough of Ridgefield, 41 N.J. Super. 74, 80 (App. Div. 1956), certif. den. 22 N.J. 227 (1956); Farber v. Margolin, 46 N.J. Super. 557, 560 (App. Div. 1957). It will be recalled, moreover, that paragraph 1 of the pretrial order describes the consolidated action as "3 negligence suits arising out of auto accident, alleging negligence in operation and repair of motor vehicle."
Plaintiff defends the charge and verdict, however, on the ground that the issue of warranty was actually "tried by consent or without the objection of the parties," and that consequently it must be treated as though raised in the pleadings and pretrial order. R.R. 4:15-2. We are not quite persuaded as to this. Plaintiff relies upon statements of counsel in opening and summing up to the jury. In *368 opening, counsel mentioned the fact that the relationship of the parties was founded on a contract and that "our claims [are] for negligence and failure under the warranty and covenant of the owner * * * to keep this auto under repair" (emphasis added). In summation, he stated that plaintiff's "theory of action is both on the ground of breach of contract  breach of warranty  and on negligence." However, neither of these statements need necessarily have been understood by defendant as a contention that there was absolute liability for defects under the contract, as distinguished from liability for failure to perform a contractual undertaking to make the repairs mentioned in the agreement. There is a distinct difference between a contractual undertaking "to make all necessary repairs and replacements" and one to warrant the serviceable condition of the vehicle. The latter obligation is breached upon the occurrence of an unserviceable condition; the former, it would seem, only after it is made to appear that the lessee knew or ought to have known of the need for repair.
To come within the protective cover of R.R. 4:15-2 as tried without objection or by consent, an issue omitted from the pretrial order must be shown to have been "squarely recognized" by the parties at the trial. Barber v. Hohl, 40 N.J. Super. 526, 533 (App. Div. 1956); Fluoro Electric Corp. v. Smith Transport Ltd., 58 N.J. Super. 287, 294 (App. Div. 1959), affirmed 32 N.J. 277 (1960); see Lertch v. McLean, 18 N.J. 68 (1955); Sattelberger v. Telep, 14 N.J. 353, 364 (1954). Whether the alleged injection of an issue of warranty in the sense of absolute liability for an unserviceable vehicle was squarely recognized by defendant from the foregoing trial references by counsel for plaintiff is highly questionable. In any event, however, a jury could not properly have been allowed to find strict liability on warranty here on the face of the agreement without at least some instructions from the court in reference to determination of the intent of the parties from all the surrounding circumstances as well as from the language of the document. *369 See Bedrock Foundations, Inc. v. George H. Brewster & Son, Inc., 31 N.J. 124, 133 (1959). The trial court's construction of the lease has not been defended in the brief or argument of plaintiff. Defendant argues the clause as to repairs speaks only in futuro and is invocable only when the necessity for repairs arises subsequent to the lease. Since we do not know what proofs may be forthcoming at the new trial in respect of intent, we refrain from any more comprehensive construction of the contract than the comments made hereinabove, beyond saying that it could not be correctly held as a matter of law that the lessor was necessarily warranting in advance the serviceable operating condition of the vehicle. Yet this was the flat purport of the charge to the jury.

II.
The proofs at the trial purporting to establish a proximate causal relationship between any negligence of Goldfarb or Miller in making repairs and the alleged "snapping" of the steering mechanism were speculative and insubstantial. Parenthetically, both Miller and Goldfarb testified that after the accident the steering apparatus was salvaged in perfect condition and installed as a single unit in another cab. The unit had been installed new in the cab here involved three to four months prior to the accident.
Plaintiff's testimony concerning the alleged repairs the day he took the cab out was as follows: Goldfarb took him to the garage for a cab on the afternoon of April 22, 1958. He had been driving Goldfarb's taxis several times a week for about a year. When they reached the garage Niewinski heard Goldfarb and Miller, the mechanic, "talking about the steering apparatus." Goldfarb asked whether "the steering apparatus was all right." Miller said it was "all set to use." At the time, the front end of the car was "jacked up." Although on direct examination Niewinski testified, "They were working on the steering," he admitted on cross-examination *370 that he saw no work done on the car while he was waiting, for about five minutes, to pick it up.
Niewinski testified that as he approached New Street, still on the northbound lane of Broad Street, he heard a "humming noise and all of a sudden the steering wheel snapped." He "couldn't hold the wheel. It just gave way on [him]." He "went right into something." He later testified that after the "snap" the car went into the southbound lane of the street. Stewart, an engineering expert for plaintiff, testified on the basis of a hypothetical question that it was his opinion that "the steering linkage had become detached from the Pitman arm of the steering mechanism of the car" after becoming loose, leaving the front wheels free of control of the driver. He further opined that there had been a defective assembly at the "tie rod end that hooks into the Pitman arm."
It appears to us that from no more than the alleged vague conversation between Goldfarb and Miller about "working" on the steering apparatus, as recounted by Niewinski, it would hardly be more than speculation for a jury to surmise a causal connection between any negligence by Miller in the work, if any, on the steering apparatus, and any detachment of the steering linkage from the Pitman arm of the apparatus. A jury may not be permitted to draw a factual inference essential to liability unless the evidence is such that reasonable men could fairly disagree on the legitimacy of the inference on the basis of probability rather than mere conjectural possibility. See Callahan v. National Lead Co., 4 N.J. 150 (1950). There was uncontradicted evidence by defendants that the steering apparatus was installed as an entire factory-assembled unit several months before, and testimony by both Goldfarb and Miller that no work was done thereafter on the steering apparatus before the vehicle was turned over to Niewinski, although other work was done on the car at that time. Stewart, plaintiff's expert, conceded on cross-examination that "the same occurrence [as happened here] could result *371 on an absolutely brand new vehicle," and that it is "reasonable to be anticipated" that with such a cab as this, three years old and constantly in use, "at some time or another there will be a mechanical failure."
We conclude that the jury verdict against Goldfarb, if predicable on the theory of negligence in repair of the car, was clearly against the weight of the evidence adduced to support the affirmative of the proposition that there was such negligence which was the cause of the breakdown described by Niewinski and Stewart.

III.
The trial court instructed the jury that since the defendant Miller defaulted in pleading, "Therefore the allegations of the complaint charging Miller with negligence are admitted." Subsequently the court explained that Niewinski's case against Goldfarb was based on "negligence of Miller who did the repairs on Mr. Goldfarb's car." Although the court followed this by informing the jury that Niewinski was required to show the alleged negligence "by the greater weight of the credible evidence," there was obvious danger of prejudice to Goldfarb in having told the jury, in the context of the relationship of Miller to Goldfarb, that by Miller's default in pleading he admitted negligence. Goldfarb argues, and with cogency, that the communication to the jury of this unqualified description of the effect of Miller's default in plea had the tendency of prejudicially deprecating Miller's testimony as a witness for Goldfarb  testimony which, if believed, would negate any negligence in the repair of the steering apparatus. Since we do not know whether, in "blaming" the accident "on the faulty cab" the jury was finding negligence in repair, or breach of warranty, or both, the instruction in the respect noted may well have been prejudicial to Goldfarb. In view of the relationship between the alleged negligence of Miller and the postulate of Goldfarb's liability, a wiser exercise of *372 discretion would have counselled the court's instructing the jury to determine for itself the liability of Miller as well as that of Goldfarb from the proofs. See Reilly v. Perehinys, 33 N.J. Super. 69, 73 (App. Div. 1954).
There was no exception on behalf of Goldfarb to the charge of the court in any respect, including that just mentioned. We therefore would probably not hold the charge in the respect just noted of itself to constitute reversible error. R.R. 4:52-1. However, taken in conjunction with the deficiency in the proofs on the claim of liability for negligent repairs and the legal dubiety of the submission to the jury of the issue of breach of warranty, it fortifies our conclusion that the interests of substantial justice will best be served by a new trial of Niewinski's action. We so hold.
In view of the foregoing determination, we will not discuss defendant's points of appeal that there was error in (a) permitting plaintiff to repeat a statement he gave to his representative before trial, and (b) in introducing into evidence all of the pretrial depositions. We find no mistaken discretion in respect of the first point and no prejudice as to the second.

IV.
We turn to Goldfarb's appeal from the judgments on the verdicts against him in favor of Mason, Henshaw and Ogborne. There was never any departure at the trial from the theory of the claims of these plaintiffs against him as based solely on Niewinski's negligence in the operation of the cab. (Goldfarb does not on this appeal challenge the submission of these cases to the jury on the assumption of an employment relationship between him and Niewinski.) Indeed, the trial judge expressly instructed the jury that unless they found Niewinski's negligence to have been the proximate cause of the accident these plaintiffs could have no recovery against Goldfarb. Yet the jury, in patent disregard or lack of understanding of the charge, found Niewinski *373 free of negligence but assessed damages against Goldfarb. The verdicts cannot be upheld notwithstanding no objection was made at the time. There was plain error. It is indeed questionable whether a fair and practicable remedy could have been devised to save the trial even if objection to the verdict had been made at the time.
The exculpation of the servant required the master also to be exonerated. (The case of these plaintiffs against Goldfarb was concededly submitted on the theory of respondeat superior and the employee's negligence.) Kelley v. Curtiss, 16 N.J. 265 (1954). The exceptions to that rule noted in Batts v. Joseph Newman, Inc., 3 N.J. 503 (1950), were not encompassed by the case here pleaded and tried by these plaintiffs against Goldfarb. The verdict may not stand as it is obviously based on either mistake as to the court's instructions or willful disregard of them.
Plaintiffs argue that an alternative issue of Goldfarb's liability to them for a defective cab was in fact actually tried. Our inspection of the record discloses no sound basis for any conclusion that Goldfarb recognized that any such claim was being prosecuted against him at the trial by these plaintiffs. See Barber v. Hohl, supra. It is obvious the trial court did not either.
Lastly, plaintiffs cite R.R. 4:55-4, which provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even though he has not demanded such relief in his pleadings, provided the parties have been given an adequate opportunity to be heard as to the relief granted." But the difficulty is that the proviso was not here met.
The judgments for these plaintiffs must be reversed.
There will be a remand for new trial of all the actions against Goldfarb. The lessons of this case indicate that unless good cause to the contrary is made to appear after the remand, upon the basis of amendments to the pleadings or otherwise, the Niewinski action should be tried separately from those of the other plaintiffs. This will be for determination *374 at trial level. Of course, there should be new pretrial orders clearly framing the issues and supported by amendments of the pleadings where appropriate.
Reversed and remanded for new trial.