208 N.J. Super. 644 (1986)
506 A.2d 805
DEBRA NICHOLL, PLAINTIFF-APPELLANT,
v.
LINDLEY REAGAN, M.D., DEFENDANT-RESPONDENT, AND DR. SCHULLMAN, CHARLES KRUEGER, M.D. AND BURLINGTON COUNTY HOSPITAL, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 1986.
Decided March 18, 1986.
*646 Before Judges MORTON I. GREENBERG and HAVEY.
Console, Marmero, LiVolsi, Wood, Curcio & Morelli, attorneys for appellant (John Morelli on the brief).
Montano, Summers, Mullen, Manuel & Owens, attorneys for respondent (Arthur Montano on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
*647 In this medical malpractice personal injury action plaintiff Debra Nicholl appeals from a judgment entered on a no cause jury verdict in favor of defendant Dr. Lindley Reagan, a general surgeon. Plaintiff contends that the trial court erred by excluding from jury consideration the issue of lack of informed consent where the issue was identified in the pretrial order and was inferentially referred to in plaintiff's expert report. She also argues that the trial court's ruling excluding expert testimony as to damages on the ground that a proper foundation had not been laid was prejudicial error. Finally, plaintiff contends that the trial court abused its discretion in denying a mistrial when it excluded lack of informed consent as an issue in the case. We reject each contention and affirm.
The gravamen of plaintiff's complaint is that defendant negligently sutured her surgical wounds following a gallbladder operation (cholecystectomy) in July 1977. Specifically, she claims that defendant "operated on plaintiff and did not remove wire sutures which were [remnants of] surgery[.]"[1] The complaint did not raise the issue of lack of informed consent. At trial plaintiff testified that she was referred to defendant in June 1977 as a result of experiencing abdominal pain. Defendant diagnosed plaintiff's condition as gallstones which required surgical removal. Plaintiff testified that defendant told her that he would utilize catgut sutures to close the inside of the surgical wound (the fascia), and nylon sutures to close the outer subcutaneous tissue and skin. She underwent the cholecystectomy on July 8, 1977. Defendant testified that he used wire sutures to close the fascia and proline, a synthetic plastic-like material, to close the subcutaneous tissue and skin.
*648 In January 1981 plaintiff discovered "something protruding from the skin." She was examined by Dr. Nahas, a general practitioner, who told her that x-rays revealed that the protrusion was a piece of metal suturing wire that had been used during the 1977 cholecystectomy. In February 1981 Dr. Nahas removed the metal fragment. Dr. Nahas testified that the wire fragment was a "clipping" which had been negligently left in the wound site during surgery. Plaintiff testified that she developed anxiety and depression over the fact that wire sutures had been used. She worried that other sutures might surface causing further complications resulting in future surgery. She began counselling with a clinical psychologist, Dr. Adelman, in June 1981 and saw him on 17 occasions between June and October of 1981. Dr. Adelman diagnosed plaintiff as suffering from a "post-traumatic stress disorder."
Dr. Criares, a specialist in obstetrics and gynecology, was plaintiff's medical expert. He testified that the wire fragment removed by Dr. Nahas may have been a whole suture rather than a clipping. He acknowledged that use of wire sutures to close the fascia was medically accepted practice and that, in fact, wire sutures were the least likely to extrude through the skin and subcutaneous tissue. It was his view, however, that defendant had improperly placed sutures in the subcutaneous tissue, one of which extruded through the tissue to the skin layer.
Plaintiff was prepared at trial to establish that she underwent a third surgical procedure in October 1984, performed by Dr. Butler, to remove the remaining wire sutures. The trial court excluded that testimony, concluding that plaintiff failed to establish a causal relationship between defendant's conduct in 1977 and the 1984 surgery.
Plaintiff's principal contention on appeal is that the trial court committed prejudicial error by precluding her from developing lack of informed consent as a theory of negligence during trial. The trial court sustained defendant's timely objection when *649 plaintiff's counsel, during his opening statement, made reference to the issue. It was counsel's intention to argue to the jury that defendant deviated from accepted medical standards and conduct by failing to disclose to plaintiff prior to the surgery that he intended to use wire sutures to close the surgical wound. Defendant's objection was that there was no mention in plaintiff's expert reports that a surgeon must disclose to a patient the type of sutures the surgeon intends to use during the surgical process. Plaintiff countered by arguing that "informed consent" was in the case by virtue of its identification as an issue in the pretrial order. She also argued that the issue could be "inferred" from Dr. Criares's second written report which stated in pertinent part as follows:
In 1977, it was good and accepted medical practice in the field of surgery to:
(1) inform the patient being operated upon of the type of procedure and techniques as well as the risk of the operative procedure that was being performed, as well as answering any of the questions that the patient might have.

(2) when using wire sutures in closing facia planes, the positing of the wire suture in such a manner as not to be extruded through the skin was definitely required according to the surgical technique.
[The defendant] ... departed from good and accepted medical practice in 1977 by placing the wire suture in such a position as to subsequently be extruded through the skin that it had to be removed by Dr. Nahas. [Emphasis supplied].
The trial court sustained defendant's objection, holding that informed consent was not a "viable issue" in that "... Dr. Criares's report does not support it."
We are satisfied that the trial court's exclusion of the informed consent issue from jury consideration was proper. The lack of informed consent is "... a negligence concept predicated on the duty of a physician to disclose to a patient information that will enable [the patient] to `evaluate knowledgeably the options available and the risks attendant upon each[.]'" Perna v. Pirozzi, 92 N.J. 446, 459 (1983), quoting Canterbury v. Spence, 464 F.2d 772, 780 (D.C. Cir.), cert. den. 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); Skripek v. Bergamo, 200 N.J. Super. 620, 633 (App.Div. 1985).
*650 In the circumstances of this case expert testimony was required to establish a prima facie case of negligence predicated on a lack of informed consent theory. It is not enough that "informed consent" was identified as an issue in the pretrial order. Plaintiff's factual and legal contentions attached to the pretrial order do not develop the issue. See Mason v. Niewinski, 66 N.J. Super. 358, 367 (App.Div. 1961). The thrust of plaintiff's claim in the order as well as in the entire body of pretrial discovery was that the cholecystectomy was negligently performed, not that defendant failed to disclose the risks attendant to the procedure. Dr. Nahas's position was that defendant negligently left a wire clipping in the wound site. Dr. Criares focused on the improper placing of wire sutures in the subcutaneous tissue. But there is absolutely nothing in either expert report suggesting that a duty existed to disclose to the patient the type of suture to be used during the procedure or that the use of a wire suture, instead of catgut or nylon, raises medically recognized risks which must be disclosed to the patient. See Calabrese v. Trenton State College, 162 N.J. Super. 145, 156-157 n. 3 (App.Div. 1978), aff'd 82 N.J. 321 (1980); Kaplan v. Haines, 96 N.J. Super. 242, 255-258 (App.Div. 1967), aff'd o.b. 51 N.J. 404 (1968). Indeed, at trial Dr. Nahas conceded that use of wire sutures to close the fascia was perfectly acceptable, as did Dr. Criares. Whether there are risks peculiarly attendant to the use of wire sutures in the closure of a surgical wound, and whether the risks are of a type requiring disclosure to a patient prior to surgery, are issues which can only be resolved in the context of acceptable medical standards established by competent expert testimony. See Calabrese v. Trenton State College, supra, 162 N.J. Super. at 157.[2]
*651 Nor did the expert reports address the issue of proximate cause. Lack of informed consent cases, as any negligence action, require proof not only of a breach of duty, but that the breach was a proximate cause of plaintiff's injuries; that is, that the patient would not have given consent to the procedure if full and adequate disclosure had been made. See Skripek v. Bergamo, supra, 200 N.J. Super. at 633-634. Proximate cause in a lack of informed consent action is resolved by application of an objective standard: in terms of what a prudent person would have done if suitably informed, not by the patient's hindsight testimony that he or she would not have subjected himself or herself to the course of treatment if the warnings had been given. Id. at 636-637; Canterbury v. Spence, supra, 464 F.2d at 791. Here, without expert testimony to the contrary, there was no objective evidentiary basis for the jury to have concluded that a prudent person would have declined the surgery if it had been revealed that wire sutures rather than catgut or nylon were to be used. As earlier stated, the evidence respecting the medically acceptable use and reliability of this type of suture was unchallenged. In the circumstances, the objective standard could not be met by plaintiff's testimony alone.
Plaintiff claims that Dr. Criares was prepared to testify as to these issues. However since the expert's written report failed to address adequately the issues, it was entirely proper for the trial court to have precluded his testimony on the subject. See R. 4:17-4(e); R. 4:23-5(b); Maurio v. Mereck Construction Co., Inc., 162 N.J. Super. 566, 569 (App.Div. 1978); but see Amaru v. Stratton, 209 N.J. Super. 1 (App. Div. 1986) (trial court permitting doctor to compare condition of plaintiff's spine prior to and after accident when testimony *652 exceeded scope of written report was not an abuse of discretion) (slip opinion at p. 8). We recognize the liberality generally accorded an applicant who seeks to amend answers to interrogatories or expert reports in order to expand the scope of proofs at trial. See R. 4:17-7; R. 4:23-5(b); Westphal v. Guarino, 163 N.J. Super. 139, 145-146 (App.Div. 1978), aff'd 78 N.J. 308 (1978). Whether testimony which exceeds the scope of an expert report should be allowed is nevertheless left to the sound discretion of the trial court. Ibid. In Westphal, the Appellate Division found that the trial court abused its discretion in disallowing the testimony of two experts for plaintiff whose reports had not been submitted until after the first date the malpractice action had been scheduled. The court concluded that the record demonstrated no design to deceive on plaintiff's part and that defendant had not been surprised or prejudiced by the late submission. The court was also concerned that exclusion of the experts' testimony deprived plaintiff of the benefit of independent expert testimony, leaving plaintiff with "having to rely solely on the testimony of [the treating physician who] was vulnerable to attack for his own diagnosis and treatment...." Id. at 148.
Here, plaintiff never made an application, either before or during trial, to amend Dr. Criares's reports. In urging allowance of Dr. Criares's testimony as to the informed consent issue plaintiff doggedly relied upon the earlier quoted recital from Dr. Criares's report arguing "[i]f that's not informed consent, then I don't know what is." Even if we deem plaintiff's argument before the trial court as having been an application to amend, we cannot say that the trial court's exclusion of Dr. Criares's testimony on the issue constituted an abuse of discretion. Unlike Westphal, where the expert reports were presented prior to trial, albeit late, here plaintiff never submitted an adequate report addressing the informed consent issue. Thus, defendant's primary emphasis during discovery was to refute the claim that defendant negligently performed the surgical procedure. It was not until plaintiff's opening statement that *653 defendant discovered the specifics of plaintiff's informed consent theory.
Moreover, the exclusion of Dr. Criares's testimony on this issue is clearly not "tantamount to a dismissal of plaintiff's action[.]" Hamilton v. Letellier Construction Company, 156 N.J. Super. 336, 338 (App.Div. 1978). Nor did it deprive her "of the benefit of independent expert medical testimony" in the case. Westphal v. Guarino, supra, 163 N.J. Super. at 148. Plaintiff's principal claim of negligent treatment as described by the treating physician and defendant's expert remained fully intact. In the circumstances, exclusion of the evidence was not an abuse of discretion.
We also reject plaintiff's contention that the trial court erred in excluding Dr. Butler's testimony. His testimony focused solely upon the issue of damages. Thus, even if the trial court had erred in precluding the testimony, it was harmless error since the jury never reached the damage issue. R. 2:10-2. Nevertheless, we are satisfied that the ruling was correct for two reasons. Firstly, Dr. Butler's testimony was properly barred because he never presented a written report. See R. 4:23-5(b). Secondly, there was no competent foundation testimony establishing that plaintiff's 1984 surgery performed by Dr. Butler for the removal of the wire sutures was in any way causally related to defendant's course of treatment in 1977. Plaintiff had the sutures removed in 1984 because she "could no longer tolerate the thought of having the wire sutures in her." But no expert testified that future extrusion of other sutures through the skin and tissue was probable or that removal of the sutures was medically indicated for any reason. Without such foundation testimony, Dr. Butler's testimony was properly excluded.
Finally, we reject plaintiff's contention that the trial court erred in denying her motion for a mistrial. The trial court's ruling limiting Dr. Criares's testimony was made during opening statements. Plaintiff waited until the third day of trial *654 to make her motion for a mistrial which was based on the ruling which had circumscribed Dr. Criares's testimony. In denying the motion the trial court stated that the motion should have been made at the beginning of the case. We cannot say that the trial court abused its discretion in so ruling. See Greensberg v. Stanley, 30 N.J. 485, 503 (1959).
Affirmed.
NOTES
[1] Summary judgment was granted in favor of defendant Burlington County Hospital. Defendant Schullman settled with plaintiff prior to trial and defendant Krueger's motion for judgment at the close of plaintiff's case was granted without objection.
[2] This is not a case where a physician failed entirely to advise a patient of risks attendent to a course of treatment and the patient suffered from a condition after treatment associated with the undisclosed risk. In those circumstances, a prima facie showing of negligence may be demonstrated without expert testimony. See Calabrese, supra, 162 N.J. Super. at 156. Here plaintiff testified in her deposition that she had extensive discussions with defendant prior to surgery respecting the nature of the procedure and the danger associated with it. Thus the issue was the adequacy of the disclosure, not whether there was any disclosure at all. See ibid.