214 N.J. Super. 649 (1987)
520 A.2d 832
YIK SANG CHEUNG AND ELEANORA CHEUNG, PLAINTIFFS-APPELLANTS,
v.
WILLIAM F. CUNNINGHAM, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1986.
Decided January 12, 1987.
Amended January 26, 1987.
*650 Before Judges DREIER, SHEBELL and STERN.
Richard J. Levinson argued the cause for appellant (Levinson, Conover, Axelrod, Wheaton & Grayzel, attorneys for appellants; George H. Conover, Jr. and Richard Levinson, of counsel; Madeline Schillaci Kropoth, on the brief).
Melinda Fabrikant argued the cause for respondent (McDonough, Murray & Korn, attorneys for respondent; Robert P. McDonough, of counsel; Melinda Fabrikant, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*651 Appellants, Yik Sang Cheung and Eleanora Cheung, his wife, brought an action against respondent, William F. Cunningham, M.D., who performed a surgical procedure on Yik Sang Cheung's spine which left him paralyzed. The case proceeded to the jury only on the theory of lack of informed consent. It returned a verdict of no cause for action after being charged that it was not only necessary that plaintiffs prove defendant inadequately informed plaintiffs of the risks of surgery but also that plaintiffs must prove that a reasonable person, if adequately informed, would have refused the surgery. We reverse and remand.
The issue is whether it is sufficient for the jury to find that the patient would not have consented to the surgery had the defendant informed the patient in accordance with the duty owed or whether it was error to advise the jury that it must make the additional finding that a prudent person in plaintiff's position would reasonably have declined the surgery. The first alternative is referred to as a subjective standard, whereas the second is labeled an objective standard. These are misnomers. The so-called subjective test is a pure cause in fact or "but for" test of proximate cause. It is the truly objective test. The test which has been labeled the objective test limits proximate cause, even where it can be proven that plaintiff's injury would not have occurred but for the failure of defendant to properly inform the patient of the risks of treatment, to those cases where plaintiff can also convince the factfinder that a reasonably prudent person would not have consented if adequately informed.
The fault of the objective standard is that plaintiff must for all practical purposes prove that any reasonable person placed in the same position would necessarily withhold consent even though plaintiff may have withheld consent and thereby have avoided injury. This is the antithesis of the doctrine of informed *652 consent which is intended to protect the individual patient's right to decline treatment.
In the case of Canterbury v. Spence, 464 F.2d 772, 790-791 (D.C. Cir.), cert. den. 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972), the United States Court of Appeals for the District of Columbia addressed the question of which standard was preferable. That court correctly pointed out that the problem revolves around the issue of causal connection, and that causality exists only when disclosure of significant risks would have resulted in a decision against it. 464 F.2d at 790. It noted that "the very purpose of the disclosure rule is to protect the patient against consequences which, if known, he would have avoided by foregoing the treatment." Ibid.
Nonetheless, the Canterbury court found that "a technique which ties the factual conclusion on causation simply to the assessment of the patient's credibility is unsatisfactory." Ibid. The court recognized that in the purist sense the issue of causation "is to be resolved according to whether the factfinder believes the patient's testimony that he would not have agreed to the treatment if he had known of the danger which later ripened into injury." Ibid. However, it found the difficulty to be that the patient's answer at the point in time it is elicited for litigation purposes "hardly represents more than a guess, perhaps tinged by the circumstance that the uncommunicated hazard has in fact materialized." Ibid. Therefore, it concluded that the causality issue was better resolved "in terms of what a prudent person in the patient's position would have decided if suitably informed of all perils bearing significance ...;" or stated another way, could adequate disclosure reasonably "be expected to have caused that person to decline the treatment because of the revelation of the kind of risk or danger that resulted in harm...." Id. at 791.
The concept of informed consent is based on a theory of liability grounded in negligence. Perna v. Pirozzi, 92 N.J. 446, 459 (1983). It is the duty "of a physician to disclose to a patient *653 information that will enable him to `evaluate knowledgeably the options available and the risks attendant upon each' before subjecting that patient to a course of treatment." Id. at 459 (quoting Canterbury, 464 F.2d at 780). We have recognized generally that there must be proof "that the breach was a proximate cause of plaintiff's injuries; that is, that the patient would not have given consent to the procedure if full and adequate disclosure had been made." Nicholl v. Reagan, 208 N.J. Super. 644, 651 (App.Div. 1986). The issue of a subjective versus an objective standard for determination of the proximate cause issue was considered in Skripek v. Bergamo, 200 N.J. Super. 620, 636-638 (App.Div.), certif. den. 102 N.J. 303 (1985), which endorsed the objective standard relying on the Canterbury rationale. The objective standard was also approved in Nicholl. 208 N.J. Super. at 651.
The trial judge here was guided by Civil Model Jury Charge § 5.28(E) which states: "[t]he question is not what the plaintiff would have decided if properly advised, but what a reasonably prudent person in plaintiff's position would have decided if fully informed." No decision of our Supreme Court has settled the question of the proper standard to be charged. Our Supreme Court however has stressed the importance of preserving the integrity of the patient's will when it comes to matters concerning the integrity of the patient's body. In re Conroy, 98 N.J. 321, 346-347 (1985). Speaking of the circumstances under which life sustaining treatment may be withheld from an incompetent, institutionalized, elderly patient, the Court noted that "it is the doctor's role to provide the necessary medical facts and the patient's role to make the subjective treatment decision based on his understanding of those facts." Id. at 347. Thus, our Supreme Court in Conroy declared:
The standard we are enunciating is a subjective one, consistent with the notion that the right that we are seeking to effectuate is a very personal right to control one's own life. The question is not what a reasonable or average person would have chosen to do under the circumstances but what the particular patient would have done if able to choose for himself. [Id. at 360-361].
*654 In our view, the totally objective standard used in the court's charge denies the individual's right to decide what is to be done with his or her body and may deny the individual the right to base consent on proper information in light of their individual fears, apprehensions, religious beliefs and the like. See McPherson v. Ellis, 305 N.C. 266, 287 S.E.2d 892, 897 (1982).
It is to be recognized that there is a relationship akin to that of a fiduciary between doctor and patient. There is a clear danger in embracing the objective test espoused in Skripek and Nicholl that the doctor knowing the patient would not elect treatment if advised of the risks may withhold such advice and yet escape liability because of a determination that a reasonably prudent person in plaintiff's position would have elected treatment or surgery if fully informed. Such a breach of fiduciary relationship would result in liability of other professionals. In re Dolan, 76 N.J. 1, 9 (1978) (attorney  client); Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 553 (1967) (real estate brokers  principals).
It would appear that the main policy consideration weighing in favor of the purely objective test which suppresses the absolute right of the individual is the fear of purposeful or even unwitting deception by the claimant. We do not perceive that the risk is any greater in these circumstances than in any other litigated case. We regularly entrust to the factfinder the task of finding the truth and protecting both defendants and the justice system against abuse. The system has been found to work well. We see no justification for subscribing to a special rule of law premised upon the fear that in this instance the factfinder may not carry out its assigned task.
As noted, liability under the informed consent doctrine is premised upon the legal and factual determination that the doctor has a duty to impart to the patient a particular level of information and that failure to carry out that duty has resulted in injury to the patient for the reason that the patient would not have undertaken the treatment if advised in accordance with *655 the applicable medical standards. We are not persuaded that there is justification for excluding from recovery under the aforementioned doctrine all of those persons who because of their personal and individual traits might be classified as more cautious and circumspect than the hypothetical reasonably prudent person. Individuals are just that; different persons with different views and characters. Each is entitled to make a personal judgment as to what each will subject his or her body to after having had the benefit of such information as is reasonably necessary for that purpose. As stated in Conroy, "[i]ndeed, if the patient's right to informed consent is to have any meaning at all, it must be accorded respect even when it conflicts with the advice of the doctor or the values of the medical profession as a whole." 98 N.J. at 353.
We would be limiting the individual's right to recover upon proof that his or her decision may be too personal, because it is not the same decision that all reasonable persons would make. This limitation is not in any way related, as in other tort areas, to a party's failure to exercise reasonable care in avoiding harm to one's self or others. Rather, under the objective standard, the individual injured is denied recovery for failure to conform to the consensus of the majority as to whether the treatment for the malady he or she suffers is advisable notwithstanding the risks, personal considerations, and the fiduciary nature of the doctor-patient relationship. We find no legal or philosophical justification for this court to adopt such a principle.
We reverse and remand for a new trial in accordance with this opinion.
STERN, J.A.D., concurring.
By adopting the subjective test today we reject the opinion of this court in Skripek v. Bergamo, 200 N.J. Super. 620, 633-638 (App.Div. 1985), certif. den. 102 N.J. 303 (1985), which was followed in Nicholl v. Reagan, 208 N.J. Super. 644, 651 (App. *656 Div. 1986).[1] I write separately only to indicate why I am ultimately persuaded by the majority based on the record before us and a balancing of the competing factors.
The issue before us is whether a patient, in the absence of advice which a reasonably prudent doctor would give, should be permitted to recover for injuries sustained during a non-negligent medical procedure he would not have elected to undergo had he known the possible consequences, even though a reasonably prudent patient would have taken the risk. Skripek would deprive the individual of his or her preference to die, for example, as opposed to becoming a paraplegic when that person would opt against an operation out of fear of paralysis, notwithstanding that the possibilities of such a result would flow in an infinitesimal number of cases.
I have concerns that adoption of the subjective test in the present context would have the potential of converting each patient into a litigant and would promote a doctor-adversarial relationship as opposed to a doctor-patient status, thereby increasing malpractice litigation and escalating medical costs. There is, however, nothing in the record to support that fear or the opposite conclusion that the majority opinion will promote more disclosure and less litigation.
Moreover, it must be emphasized that the obligation to advise the patient is to be judged by reasonable medical standards in the community and that deviation from the duty to properly advise must be found before the question of proximate cause is ever reached. See Nicholl v. Reagan, supra, 208 N.J. Super. at 651; Skripek v. Bergamo, supra, 200 N.J. Super. at 633-634. See also Perna v. Pirozzi, 92 N.J. 446, 460 (1983). "Informed consent is a negligence concept predicated on the duty of a physician to disclose to a patient information that will enable him to `evaluate knowledgeably the options available and the risks attendant upon each' before subjecting that patient to a *657 course of treatment." Perna v. Pirozzi, supra, 92 N.J. at 459 (1983); see also Canterbury v. Spence, 464 F.2d 772, 780 (D.C. Cir.1972), cert. den. 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); Annot. "Modern Status of Views as to General Measure of Physician's Duty to Inform Patient of Risks of Proposed Treatment," 88 A.L.R.3d 1008 (1978). Thus, the duty to warn or disclose, like all questions of negligence, is to be tested by an objective standard of reasonableness  in this instance, deviation from accepted standards of medical care. Hence, absent breach of the duty to warn, the question of proximate cause (involving the objective or subjective standard) is never reached. See Perna v. Pirozzi, supra, 92 N.J. at 460.[2] In this context, I am prepared to accept the subjective standard, particularly because "a competent adult person generally has the right to decline to have any medical treatment initiated or continued." Matter of Conroy, 98 N.J. 321, 347 (1985).
A number of practical problems were considered in Canterbury v. Spence, which was in turn quoted in Skripek v. Bergamo:
It has been assumed that the issue is to be resolved according to whether the factfinder believes the patient's testimony that he would not have agreed to the treatment if he had known of the danger which later ripened into injury. We think a technique which ties the factual conclusion on causation simply to the assessment of the patient's credibility is unsatisfactory. To be sure, the objective of risk-disclosure is preservation of the patient's interest in intelligent self-choice on proposed treatment, a matter the patient is free to decide for any reason that appeals to him. When, prior to commencement of therapy, the patient is sufficiently informed on risks and he exercises his choice, it may truly be said that he did exactly what he wanted to do. But when causality is explored at a post-injury trial with a professedly uninformed patient, the question whether he actually would have turned the treatment down if he had known the risks is purely hypothetical: `Viewed from the point at which he had to decide, would the patient have decided differently had he known something he did not know?' And the answer which the patient supplies hardly represents *658 more than a guess, perhaps tinged by the circumstance that the uncommunicated hazard has in fact materialized.
In our view, this method of dealing with the issue on causation comes in second-best. It places the physician in jeopardy of the patient's hindsight and bitterness. It places the factfinder in the position of deciding whether a speculative answer to a hypothetical question is to be credited. It calls for a subjective determination solely on testimony of a patient-witness shadowed by the occurrence of the undisclosed risk.... [Canterbury v. Spence, 464 F.2d at 790-791]. [200 N.J. Super. at 637].
While these concerns are legitimate and noteworthy, factfinders resolve credibility issues every day, and the patient would have the burden of persuasion even under the subjective standard. See Evid.R. 1(4); Buckelew v. Grossbard, 87 N.J. 512, 525 (1981); Skripek v. Bergamo, supra, 200 N.J. Super. at 634-636.
Accordingly, I concur in the judgment of the court.
NOTES
[1] See also Perna v. Pirozzi, 92 N.J. 446, 460 n. 2 (1983).
[2] As stated in Skripek, supra, 200 N.J. Super. at 636, "[T]here must be a causal relationship established between the physician's failure to inform the patient of the risks and alternatives attendant to the proposed [treatment] and the injuries sustained by the plaintiff."