230 N.J. Super. 216 (1988)
553 A.2d 346
GINGER GRASSER AND JOHN GRASSER, PLAINTIFFS-APPELLANTS,
v.
DR. HUGO KITZIS, DEFENDANT-RESPONDENT, AND RIVERSIDE GENERAL HOSPITAL, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 9, 1988.
Decided June 13, 1988.
*217 Before Judges ANTELL and LANDAU.
Gigante & Maggiano, attorneys for appellants (Nicholas L. Gigante, on the brief).
Francis & Berry, attorneys for respondent (John W. O'Farrell, of counsel; Joan Bannan Lorio, on the brief).
LANDAU, J.A.D.
Ginger Grasser and her husband John appeal from final judgment entered in favor of defendant Dr. Hugo Kitzis in a medical malpractice action following jury trial. A motion for partial judgment n.o.v. and for new trial was denied.
The complaint arose out of serious injuries to Mrs. Grasser's uterus and small bowel suffered during a dilation and suction evacuation (D & E) procedure employed by Dr. Kitzis to clear from her uterus the remains of dead fetal twins discovered during prenatal examination early in the second trimester of pregnancy. Available options for removal of fetuses upon detection of non-viability include awaiting onset of spontaneous labor and evacuation for an indefinite time, which can be as long as six weeks; attempting to induce labor and consequent evacuation of the fetuses; and a dilation and suction evacuation of the uterus under general anesthesia.[1] On recommendation of Dr. Kitzis, the latter method was employed. After the procedure, the Grassers were informed that there was a uterine perforation and a portion of small bowel had been suctioned *218 through the perforation. These injuries were repaired by surgery during the extended procedure.
The case was tried on theories of negligent treatment and medical performance, and negligence by reason of lack of informed consent.
On appeal, the Grassers argue that the jury was not properly instructed regarding the issue of informed consent and proximate cause and that they are entitled to a new trial on damages. This argument was made to the trial judge by motion for molded judgment n.o.v. on the issue of liability and for new trial on damages only.
Secondly, as to the jury's findings that neither the decision to recommend and perform a D & E nor the manner in which Dr. Kitzis performed the operation were negligent, the Grassers urge that those findings were against the weight of the evidence.
We have carefully considered the record and the briefs of counsel on the second point, and note that those negligence questions essentially involved the jury's evaluation of witness credibility. We are satisfied as to this issue that the evidence in support of the jury verdict was not insufficient, R. 2:11-3(e)(1)(B), and that the determination of the trial court on the motion for new trial did not constitute a manifest denial of justice to the extent the motion and determination rested on these grounds. R. 2:11-3(e)(1)(C).
We turn to the question of informed consent.
The Grassers each testified that although they knew that the D & E procedure was an operation which had to be performed in a hospital and under anesthesia, they were not told of any of the risks which the procedure entailed. In particular, they said they were never told of possible complications such as perforation of the uterus wall or damage to the bowels, nor were they told about the risk of affecting ability to bear children in the event of such injury. According to the *219 Grassers, they merely went along with Dr. Kitzis' recommendation. This was sharply disputed by Kitzis who contended that he offered to the Grassers three options: waiting for natural expulsion; induced labor; and the D & E procedure. He also testified that he advised of the risk of uterine perforation, and that Mrs. Grasser indicated that she wanted to "get rid of this problem" as soon as possible without pain. Kitzis said that Mrs. Grasser was very upset and he did not think she would be able to wait an indefinite period with dead fetuses inside her body. He made an examination to confirm that the fetuses were less than four months old, and then recommended the suction procedure.
A consent form was signed. Mrs. Grasser testified that it was not read or explained to her, and that she signed the form without reading it. Hospital records indicated that she had been given a sleeping pill prior to submission of the consent form. Kitzis agreed that it was 10:30 p.m. when he came to have plaintiff sign the form, but stated that it was signed in the presence of one of the floor nurses in whose presence he explained the procedure and possible risks of uterine perforation, infections and bleeding.
A verdict sheet was submitted to the jury during the jury charge. The first question it asked the jury to consider in deliberations was whether Dr. Kitzis had been negligent in performing the D & E procedure prior to trying another option. The jury found no negligence in this regard. A second interrogatory asked whether defendant was negligent in the manner in which the procedure was performed. The jury responded that the defendant was not negligent in manner of performance.
The verdict sheet went on to ask: "3A. Was Dr. Kitzis negligent in the manner in which he obtained Mrs. Grasser's consent to the dilation and suction curettage?" All six jurors answered, "Yes." Question 3B. asked, "If some information was omitted, would that information have caused a reasonably *220 prudent patient to refuse consent?" That question was answered, "Yes" by five votes, and "No" by one vote.[2]
*221 Thus, there is no question that this jury specifically found not only negligent procurement of the consent but that a reasonably prudent person would have refused consent to the procedure if omitted information had been provided.
The question of proximate cause was numbered 4, following the above questions. The format precluded the jury from finding damages unless the following question was answered in the affirmative. "4. If Dr. Kitzis was negligent, was that the proximate cause of Mrs. Kitzer's [sic] injuries?" This was answered "No" by a vote of five to one.
Informed-consent cases indisputably require that the plaintiff prove not only that the physician failed to comply with the applicable standard for disclosure but also that such failure was the proximate cause of plaintiff's injuries. In this case, we need not address the question of whether the correct informed-consent standard was charged to the jury, (see, Largey v. Donald Rothman, M.D., 110 N.J. 204 (1988)), as the jury here expressly found that the presence of the omitted information would have caused a reasonably prudent patient to refuse consent.
The trial judge's charge defined "proximate cause" in conventional terms. Analysis of the case literature in this area shows that proximate causation is established by answering, as this jury did, the inquiry whether a prudent patient would have refused consent if full and adequate disclosure had been made. See, Largey v. Rothman, 110 N.J. 204 (1988); Nicholl v. Reagan, supra, 208 N.J. Super. at 651; Skripek v. Bergamo, supra, 200 N.J. Super. at 633-634. As our Supreme Court observed in Perna v. Pirozzi, 92 N.J. 446, 460 n. 2 (1983), under the "prudent patient" standard, "causation must also be shown: i.e., that the prudent person in the patient's position would have *222 decided differently if adequately informed." See, also, Canterbury v. Spence, 464 F.2d 772, 791 (D.C. Cir.1972), cert. den., 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972) (language adopted in Largey v. Rothman, supra):
If adequate disclosure could reasonably be expected to have caused that person to decline the treatment because of the revelation of the kind of risk or danger that resulted in harm, causation is shown .. ." (Emphasis supplied)
Thus, the jury's answer to jury interrogatory 3(b) established causation, at least on the facts of this case. We recognize that had all the recited events occurred, but the injury suffered was arguably unrelated to the operation (e.g., a broken arm or a contention that the uterus spontaneously ruptured) proximate causation of injury by the operation would also be at issue. Here, even the testimony of Dr. Kitzis conceded that the uterine and bowel injuries occurred during the D & E procedure. This was also conceded in the pretrial memorandum.
As the Supreme Court has now firmly adopted in Largey the quoted Canterbury objective test, we must reject Dr. Kitzis' argument that the jury's negative proximate cause response meant "... that regardless of whether a reasonably prudent patient would have submitted to the D & E procedure, plaintiff Ginger Grasser would have." The jury provided an affirmative response to the objective inquiry. In consequence, it would be a clear miscarriage of justice not to enter a judgment in favor of the Grassers on liability, inasmuch as that finding established proximate causation. To the extent it might be urged that the relationship of the injuries to the operation was negatively resolved by the jury's response to the proximate cause inquiry, this theoretical argument is dispelled by the overwhelming and undisputed proof to the contrary which would also require our intervention to prevent a miscarriage of justice.
Reversed. Judgment is entered for plaintiffs on the issue of liability. The matter is remanded for a trial on damages.
NOTES
[1] Dr. Kitzis says he discussed all three options with the Grassers. The Grassers say they were informed only of the options of induced labor or the D & E procedure.
[2] The jury charge incorporated aspects of both the "professional" and "prudent patient" standards. See discussions in Skripek v. Bergamo, 200 N.J. Super. 620, 636 (App.Div. 1985), certif. den. 102 N.J. 303 (1985); Nicholl v. Reagan, 208 N.J. Super. 644, 651 (App.Div. 1986), and Cheung v. Cunningham, 214 N.J. Super. 649 (App.Div. 1987). These questions have now been resolved in Largey v. Rothman, 110 N.J. 204 (1988), which adopted the "prudent patient" test.

The jury was here charged:
The third contention that Mrs. Grasser makes is that she did not give a `conformed consent' [sic] to the procedure. In the absence of an emergency or of unforeseeable conditions, a physician or surgeon before operating must obtain the consent of the patient. The consent of the patient, to be sufficient for the purpose of authorizing a particular surgical procedure, must be what we call an informed consent. That is, a doctor, before performing an operation, has a duty to explain in terms understandable to the patient what he proposes to do, the reasons for it, what the risks and benefits will be and what the alternatives are. The doctor's duty is to explain all the facts that a reasonable medical practioner [sic] would explain so that the patient may give consent with awareness of; 1, existing physical condition; 2, the purposes of and the advantage of submitting to the operation of; 3, the risk that the operation may entail; 4, the risks involved if no operation is performed; and 5, the available alternatives and the risks and the advantages involved in them. The question here is not what Mrs. Grasser would have decided if properly advised but what a reasonably prudent person in her position would have decided if fully informed. You will have to consider the facts and circumstances that existed at the time that her consent was obtained and you can't look at the facts and circumstances that developed later to determine if there was consent or informed consent. The law does not require a doctor in every case to disclose to a patient all of the details of the operation nor does it require that he disclose all the possible ill effects which could conceivably follow the proposed operation, no matter how remote they may be. The standard remains whether or not Dr. Kitzis disclosed to Mrs. Grasser what a reasonable medical practioner [sic] in the same or similar circumstances would have told their patients before undertaking this procedure.
If you find that Dr. Kitzis failed to give Mrs. Grasser all the information that a reasonably prudent medical practioner [sic] would have given his patient under the circumstances and that a reasonably prudent person, under all of the circumstances, would not have consented and submitted to the operation if she had been so informed and further that it was the proximate cause of her injury, the results would be finding for Mrs. Grasser. If you find that Dr. Kitzis gave Mrs. Grasser all of the information which a reasonable prudent medical practioner [sic] would have given to a patient in her condition, or if you find that some information was omitted but the fact that it was omitted would not have caused a reasonable prudent person to refuse consent, then you would find for Dr. Kitzis.