Accordingly, we affirm the judgment under review.

587 A.2d 634

JULIE A. KOSIWCZUK, EXECUTRIX FOR THE ESTATE OF BAR-BARA KOSIWCZUK, DECEASED, PLAINTIFF–APPELLANT, v. ROMEO LAURENTE, M.D., DALE GOODE, M.D., AND HAMIL-TON HOSPITAL, AND FEROZ SAFDAR, M.D., DEFENDANTS, AND CHRISTETA LAURENTE, M.D., DEFENDANT–RESPON-DENT.

Superior Court of New Jersey
Appellate Division

Argued December 5, 1990—Decided February 25, 1991.

Before Judges KING, LONG and STERN.

*Ian Stuart* argued the cause for appellant (*Stuart & Olizi*, attorneys).

*Gregory J. Giordano* argued the cause for respondents (*Lenox, Socey, Wilgus, Formidoni & Casey*, attorneys).

The opinion of the court was delivered by

KING, P.J.A.D.

In this medical malpractice death action the jury returned a verdict comprised of inconsistent answers to general verdict interrogatories and a special interrogatory. The verdict also included a damage award of $265,000 against Dr. Christeta Laurente only. The answer to the special interrogatory on the medical cause of death conflicted with the answers to the more general interrogatories on respondent's professional negligence

and its proximate causation to damages. In response to a post-trial motion, the judge entered a judgment in Dr. Laurente's favor notwithstanding the verdict (n.o.v.), *R.* 4:40–2(b). The plaintiff appeals.

Under *R.* 4:39–2 [1] the judge had three choices in the circumstances. Under this rule he could: (1) direct the entry of judgment in accordance with the special interrogatory (as he did here), (2) return the matter to the jury for further consideration of its answers and a verdict, or (3) order a new trial. His ultimate ruling of a judgment n.o.v. was consistent with the answer to the special interrogatory which established that decedent's death was unrelated to any possible negligence on Dr. Christeta Laurente's part.

Where the answer to a special interrogatory is inconsistent with the general verdict, the judge may indeed direct entry of judgment in accordance with that answer, notwithstanding the general verdict but the judge does not have to do so. The purpose of this rule which allows use of special interrogatories is "to require the jury to specifically consider the essential issues in the case, to clarify the court's charge to the jury, and to clarify the meaning of the verdict and permit error to be

---

[1] *R.* 4:39–2 states:

The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall direct the jury both to make written answers and to render a general verdict, and shall instruct it, as is necessary, to enable it to do so. If the general verdict and the answers are consistent, the court shall direct the entry of the appropriate judgment upon the verdict and answers. *When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers notwithstanding the general verdict,* or may return the jury for further consideration of its answers and verdict, or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial. [Emphasis supplied.]

localized." *Wenner v. McEldowney & Co.*, 102 *N.J.Super.* 13, 19, 245 *A.*2d 208 (App.Div.), *certif. denied* 52 *N.J.* 493, 246 *A.*2d 452 (1968); *see Bleeker v. Trickolo*, 89 *N.J.Super.* 502, 507, 215 *A.*2d 571 (App.Div.1965). This purpose is fulfilled by the jury's special answer.

What follows in the wake of inconsistent answers is our concern here. We conclude that in this case the judge should have fully explained the implications of the answer to the special interrogatory on the "medical cause of death" to the jury and asked the jury to resume deliberations. He never did this in either the main or the supplemental jury instruction. We thus conclude that the judge prematurely took the matter from the jury. We reverse and remand for a new trial on all issues.

In this action for wrongful death allegedly caused by Dr. Laurente's malpractice the conflict was sharp and clear.[2] The plaintiff claimed the decedent's (Barbara Kosiwczuk), death on May 3, 1984 was caused by negligent treatment of her edematous, thrombophlebitic left foot and leg which resulted in a massive, fatal pulmonary embolism. The defendant-respondent physician, Dr. Laurente contended that death was caused by disseminated intravascular coagulation secondary to septicemia which condition had nothing to do with her treatment of the patient. Indeed, nobody ever claimed that it did.

Plaintiff's experts, Dr. Slawek and Dr. Roberts, testified that Dr. Christeta Laurente (1) negligently treated her thrombophlebitis and (2) this resulted in the pulmonary embolism causing death. Defendant Dr. Laurente's experts, Dr. Rubin, Scotti, and Dixon, testified that the cause of death was "overwhelming bacterial septicemia" and that defendant Dr. Laurente's treatment had nothing to do with this condition or her death from it.

---

[2]The jury found no cause of action against defendants Drs. Goode and Safdar. Dr. Romeo Laurente prevailed on summary judgment. These verdicts are not challenged on this appeal.

No autopsy was done so the cause of death could not be precisely established post mortem.

The judge gave the jury this verdict form when it retired to deliberate.

## JURY VERDICT FORM

I   Was defendant, Dale Goode, M.D., negligent, i.e., did his medical care of decedent, Barbara Kosiwczuk, deviate from accepted standards of medical practice for a specialist in emergency medical care?

    YES___ NO X

II   If your answer to question I is "yes," was such negligence a proximate cause of the death of decedent, Barbara Kosiwczuk?

    YES___ NO___

III   Was defendant, Christeta Laurente, M.D., negligent, i.e., did her medical care of decedent, Barbara Kosiwczuk, deviate from accepted standards of medical practice for a specialist in internal medicine?

    YES X NO___

IV   If your answer to question III is "yes," was such negligence a proximate cause of the death of decedent, Barbara Kosiwczuk?

    YES X NO___

V   Was defendant, Feroz Safdar, M.D., negligent, i.e., did his medical care of decedent, Barbara Kosiwczuk, deviate from accepted standards of medical practice for a specialist in internal medicine?

    YES___ NO X

VI   If your answer to question V is "yes," was such negligence a proximate cause of the death of decedent, Barbara Kosiwczuk?

    YES___ NO___

If your answers are that none of the defendants were negligent or that, if one or more defendants were negligent, that his, her or their negligence was not a proximate cause of the death of decedent, then return your verdict at this point as no cause of action against all defendants.

If your answers are that one of defendants was negligent which negligence was a proximate cause of the death of decedent, then pass directly to question VIII, the damages question, and answer that question.

If your answers are that more than one of defendants were negligent and that their negligence were proximate causes of the death of decedent, then answer question VII and question VIII.

VII   If you find that more than one of defendants were negligent and that their negligence were proximate causes of the death of decedent, then—taking the combined negligence of such defendants that proximately contributed to the death of decedent to be 100%—what percentage of such total negligence is attributable to:

a. Defendant, <u>Dale Goode, M.D.</u>     ____%

b. Defendant, <u>Christeta Laurente, M.D.</u>     ____%

c. Defendant, <u>Feroz Safdar, M.D.</u>     ____%

                                              100%

VIII   <u>DAMAGES</u>:—Answer both A and B.

A.  What sum of money would fairly and reasonably compensate the estate of <u>Barbara Kosiwczuk</u> for decedent's pain and suffering, and for funeral and burial expenses?

<u>$15,000.00</u>

B.  What sum of money would fairly and reasonably compensate the next of kin of decedent, <u>Barbara Kosiwczuk,</u> for financial losses sustained or to be sustained by them in the future as a result of decedent's death?

<u>$250,000.00</u>

Sometime later during its deliberations the jury requested a transcript of certain witness' depositions. The judge denied the request but then *sua sponte* asked the jury to answer this additional interrogatory:

<u>SUPPLEMENTAL JURY INTERROGATORY</u>

What was the medical cause of decedent, <u>Barbara Kosiwczuk's</u> death: (check one)

    a.    Pulmonary Embolism

    b.    | Septicemia |

The jurors circled "septicemia." As seen from these answers, the jury generally concluded that Dr. Laurente deviated from acceptable standards of medical practice which proximately caused Barbara Kosiwczuk's death. Drs. Goode and Safdar were exonerated. But the jury specifically found that the medical cause of death was septicemia, the medical cause unrelated by plaintiff's proof to fault on Dr. Laurente's part.

Dr. Laurente promptly moved for judgment n.o.v. or a new trial, see *R.* 4:40–2(b); *R.* 4:49–1. The plaintiff counter-moved to enter judgment on the $265,000 damage award, to vacate the special interrogatory asked by the judge, or for a new trial as to all defendants if Dr. Laurente got a new trial. As noted, the judge entered an order granting judgment n.o.v. for defendant

Dr. Laurente. Plaintiff on appeal asks reinstatement of the $265,000 verdict or at minimum a new trial.

We conclude that the judge erred. The judge should have returned the matter to the jury for further consideration of its inconsistent answers with a proper explanation in an effort to resolve that inconsistency. He should not have accepted the inconsistent answers as the jury's final decision without first trying to obtain consistent answers.

We are satisfied from our review of the record that the proofs presented mutually exclusive theories of decedent's treatment and demise, one consistent with death by pulmonary embolism because of Dr. Laurente's malpractice, the other consistent with death by septicemia unrelated to any malpractice. The proofs presented no middle ground, no room for concurrency of medical causation. Any compromise between the two mutually exclusive theories would have been irrational, unscientific and ungrounded in the proof. As we stated in *Parker v. Goldstein*, 78 *N.J.Super.* 472, 189 *A.*2d 441 (App.Div. 1963), the obligation was upon the plaintiff to prove through expert testimony deviation by the defendant physician "from recognized standards as a basis for liability, [which] necessarily included a showing directly, or by legitimate inference, that the departure from a standard was causally connected with the death." *Id.* at 480, 189 *A.*2d 441. "Acceptable medical opinion of causation [is] an integral and indispensable part of plaintiff's case." *Id.* at 484, 189 *A.*2d 441. *See Buckelew v. Grossbard*, 87 *N.J.* 512, 524–525, 435 *A.*2d 1150 (1981).

Our rules do explicitly permit appropriate molding of a verdict respecting liability where the jury's answer to specific questions clearly contradicts its answer to general questions. In such a case, the "court may direct the entry of judgment in accordance with the answers." *R.* 4:39–2. But, of course, the judge may also return the jury for further deliberations or even order a new trial. "By its very terms, the Rule confers substantial discretion on the trial court in deciding which course

to choose." *Dubak v. Burdette Tomlin Memorial,* 233 *N.J.Super.* 441, 455, 559 *A.*2d 424 (App.Div.1989). See *Pressler,* Current *N.J.Rules,* R. 4:39–2, Comment at 951 (1991). In *Grasser v. Kitzis,* 230 *N.J.Super.* 216, 222, 553 *A.*2d 346 (App. Div.1988), we accepted the specific answer over the general verdict and directed entry of judgment accordingly. There this court had no doubt from the answers exactly what the jury found on causation and informed consent. In the case before us, we just cannot tell what the jury intended. Thus where the answers are irreconcilably inconsistent, "bespeaking jury mistake or confusion," and do not resolve the dispute, a new trial becomes necessary. *J.M.B. Enterprises v. Atl. Emp. Ins.,* 228 *N.J.Super.* 610, 616, 550 *A.*2d 764 (App.Div.1988).

Judge Pressler's comments in a situation akin to ours are pertinent. "Faced with this logical incongruity, the trial judge was obligated to explain the difficulty to the jury and, upon proper supplemental instructions, to require it to reconsider, at the least, both questions to the end of assuring consistent answers accurately reflecting the jury's finding." *Roland v. Brunswick Corp.,* 215 *N.J.Super.* 240, 244, 521 *A.*2d 892 (App. Div.1987). Our Supreme Court recently agreed that "[i]n civil trials general verdicts that are inconsistent with special verdicts are considered evidence of jury confusion or mistake." *Williams v. James,* 113 *N.J.* 619, 631, 552 *A.*2d 153 (1989) (jurors' vote on negligence and allocation of fault may conflict if juror adequately instructed). See *Dubak v. Burdette Tomlin Memorial Hosp.,* 233 *N.J.Super.* 441, 456, 559 *A.*2d 424 (App. Div.1989), where Judge Baime said: "Faced with the logical incongruity in the jury's original answers to interrogatories, the trial court was obliged to explain the difficulty and, upon proper supplemental instructions, to require it to reconsider its responses in light of the law."

The judge's oral opinion here explained very carefully the foundation in the record for his decision to enter judgment for defendant, Dr. Laurente, based on the answer that septicemia was the "medical cause" of death. He said:

At trial, the plaintiff in their pleadings and all their evidence advanced the theory that the decedent had died from pulmonary embolism and that the defendants were negligent in not having properly diagnosed that condition and not properly having treated the decedent for that condition and that was the proximate cause of death and that was the theory advanced in the complaint in the case and it was the theory that was testified to by the expert witnesses that were presented by the plaintiff. In fact, the witnesses for the plaintiff testified that the sole and exclusive cause of death of the decedent was a pulmonary embolism that had come from a thrombophlebitis condition of the left leg, I believe, or left foot of the decedent and that negligence of the defendant, Dr. Christeta Laurente, was not properly diagnosing the condition and administering anticoagulants in order to dissolve the clot and to prevent the pulmonary embolism for having—from having occurred.

The experts presented by the plaintiff indicated that that was the sole and exclusive cause of death of the decedent. And they were very categorical about it and they stated that when asked about septicemia, indicated that in their opinion the decedent did not die of septicemia, that any laboratory traces of infection in the blood stream that were reached—tests that were performed subsequent to the decedent's death that showed the presence of bacteria in the blood stream must have been an odd chance resulting from some intravenous injections or a catheter that was inserted in the chest wall of the decedent just prior to her death or perhaps from intubation that some bacteria may have gotten in and was very localized type of situation and that it may have resulted in a false culture for bacteria in the blood but neither one of the expert witnesses who testified for the plaintiff testified that there was any septicemia present at the time of death.

There was no testimony on the part of any of the experts that the—there was anything—any deviation whatsoever from accepted medical practice on the part of the defendant, Christeta Laurente, with respect to treatment for septicemia. The only deviation testified to by the experts for the plaintiff had to do whether deviation from accepted medical standards with regard to the treatment of a thrombophlebitis and that deviation being not having begun anticoagulant therapy immediately when the decedent was first treated by the [defendant].

Further the plaintiff's experts testified that there was insufficient time from the time that Dr. Christeta Laurente examined the plaintiff and the time of her death for a septicemia to have developed and that it would take a longer of time—three of four days—for a septicemia to develop and the time period was not that long. So, it was the opinion of the experts presented by the plaintiff that there was no septicemia present at the time of death.

## As to the defense testimony, the judge said:

On the other hand, the expert witnesses for the defendant, her testimony as to the cause of death was diametrically opposite of the plaintiff's witnesses. Their testimony was that the decedent died of massive septicemia, that it was rapid onset that that was the cause of death. And all of the expert witnesses presented by the defendants and as well as the defendants themselves, they are medical doctors in giving their diagnosis, was that the cause of death was

septicemia and that there was no indication medically that there is a thrombo-phlebitis or a pulmonary embolism and their testimony—expert testimony was that that the decedent did die of septicemia and that no pulmonary embolism was present causing death.

As to possible concurrency of medical causes of death, he said:

No medical expert testified that in their opinion that there was both septice-mia and pulmonary embolism present at the same time. As I say, the testimony of the expert witnesses that were presented in the case was categori-cal, one said solely and exclusively the cause of death was pulmonary embolism; and the other experts—or the defendants said solely and exclusively the cause of death was septicemia. So, it was a black and white situation presented to the jury.

The judge properly stressed with great validity to the record that there was absolutely no medical testimony supporting any possible theory of concurrent or combinations of causes to any degree. Nor was there any testimony that Dr. Laurente negli-gently caused or treated the fatal septicemia.

The judge concluded his oral opinion on the post-trial motions by saying:

So, there is an apparent and obvious internal inconsistency in the verdict that the jury had reached in this case. And the Court must either grant a new judgment in favor of the defendant or a new trial, depending upon what standard would be more applicable to this case. The Court is satisfied that the jury verdict cannot stand and it's simply what can be done about it.

\*      \*      \*      \*      \*      \*      \*      \*

In looking at the trial in this case, it's apparent to the Court that we're not dealing with a simple deficiency in evidence and that there is really no issue that was not fully tried before the jury. It's simply that the evidence presented by the plaintiff was diametrically different than the evidence presented by the defendant. And the jury while finding that there was negligence on the part of Dr. Christeta Laurente, it did so with respect to—it did so but not based upon the evidence in the case that they found that she died of—seemed to die of septicemia. There was no medical evidence in support of deviation with regard to treatment for septicemia. And also finding that the decedent died from septicemia, there was no medical evidence from which the jury could find that any negligence on the part of Dr. Laurente with regard to treatment for septicemia was a proximate cause of death, either at lost chance or increased risk, the lesser standard that's applied.

So, the Court is satisfied that the minds of reasonable men could not differ, that if the death was from septicemia, which the jury found to be the fact, minds of reasonable men could not differ that there was no proof and no evidence that Dr. Laurente deviated from accepted medical standards in treat-ing for that cause of that the—any failure on the part of Dr. Laurente, had

there been evidence to that effect to treat for septicemia, was a substantial contributing factor to the cause of death.

The only "fair result," the judge said, was a judgment n.o.v. "rather than having a new trial." We disagree.

The judge never really explained to the jury the relationship between the "supplemental" interrogatory on the scientific or medical cause of death and the "general verdict" interrogatories on common-law liability, probably because the former was asked *sua sponte* during the course of jury deliberations. He should have done so. Such explanation certainly would have reduced the likelihood of inconsistency. Defense counsel persistently asked for such an instruction or explanation but was spurned.

This situation is not unlike *Williams v. James*, 113 *N.J.* 619, 552 *A.*2d 153 (1989), where the Supreme Court held that a juror in a civil case could vote "no negligence" on a 5–1 plaintiff's verdict and still participate in the vote on the allocation of fault interrogatory. The Court held that the "any-five" principal prevailed over the "same-five" principal. In approving the "any-five" principal, Justice Handler, for the Court, stressed the absolute necessity for precise and careful jury instructions. He stressed that "it is only under exceptional circumstances that jurors are not trusted to act conscientiously" and that "a jury is deemed capable of following a curative instruction to ignore prejudicial matter." *Id.* at 632, 552 *A.*2d 153. In such a situation it is "essential that jurors be properly instructed" and instructed "clearly and emphatically." *Ibid.* Because the "any-five" instruction failed this test, the Court reversed and set aside the jury's findings in *Williams v. James.* We find the same remedy necessary here because we are not confident that the special finding on medical causation was reliable absent an adequate, reasoned and precise explanation to the jury. Also, the trial judge should have given an "ultimate outcome" instruction in this case. *See Roman v. Mitchell*, 82 *N.J.* 336, 346–347, 413 *A.*2d 322 (1980). This would surely have helped to avoid inconsistency.

Moreover, with this type of scientific factual causation issue crucial to Dr. Laurente's liability, the standard jury instructions on concurrent or combined factual causation or multiple proximate causation could well be jettisoned on the remand, where she is the sole defendant, because they are unhelpful, if not obstructive, in the search for truth. This approach makes sense in a case like this where the scientific finding must square with the legal conclusion.

Reversed for a new trial on all issues.