703 A.2d 368

JOHN POSTA, PLAINTIFF/APPELLANT, v. HAROLD E. CHUNG–LOY, M.D., DAVID M. ROSENHECK, M.D., MARK W. WOLFMAN, M.D., AND JOHN F. KENNEDY MEDICAL CENTER,[1] DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1997—Decided December 18, 1997.

---

[1] Respondent Marc M. Wolfman, M.D., was improperly pleaded as Mark M. Wolfman, M.D.

Before Judges CONLEY, WALLACE and CARCHMAN.

*Richard C. Swarbrick*, argued the cause for appellant.

*Jeremy P. Cooley*, argued the cause for respondent Harold E. Chung–Loy, M.D. (*Lenox, Socey, Wilgus, Formidoni & Casey*, attorneys; *Mr. Cooley*, of counsel and on the brief; *James J. Breslin, III*, on the brief).

No briefs were filed by respondents David M. Rosenheck, M.D., Marc M. Wolfman, M.D., or John F. Kennedy Medical Center.

The opinion of the court was delivered by

WALLACE, J.A.D.

Plaintiff John Posta appeals from the involuntary dismissal of his medical malpractice action against defendants, Harold E. Chung–Loy, M.D., David M. Rosenheck, M.D., Marc M. Wolfman, M.D., and the John F. Kennedy Medical Center. Prior to trial, the judge granted summary judgment in favor of defendants on the issues of negligence, common knowledge, and *res ipsa loquitur* because plaintiff had failed to produce any expert opinion on causation. At trial, the judge dismissed plaintiff's case on the issue of informed consent for failure to prove proximate cause. On appeal, plaintiff challenges as error: (1) the trial court's case management order dated March 18, 1996, (2) the grant of summary judgment to defendants on the issues of *res ipsa loquitur* and common knowledge, (3) involuntary dismissal on the issue of informed consent at trial, and (4) denial of his motions for reconsideration. In addition, plaintiff claims that the trial court erred by denying his numerous motions for a mistrial. We affirm.

## I

Plaintiff filed a medical malpractice complaint against defendants contending that they deviated from accepted standards of care in treating him. The complaint alleged negligence, gross negligence, outrageous conduct, and failure to obtain informed consent, resulting in serious and permanent injury. During discovery, plaintiff responded to portions of interrogatories by stating that written reports of his expert would be supplied. Thereafter, defendants made various motions and the motion judge entered several orders compelling the production of plaintiff's expert reports, but no such reports were produced. On July 8, 1994, the motion judge ordered plaintiff to provide an expert liability report within ninety days or be barred from introducing expert testimony at the time of trial. Plaintiff failed to submit a report by the determined deadline.

On December 2, 1994, the motion judge granted Dr. Chung–Loy's motion for partial summary judgment against plaintiff on the issues of *res ipsa loquitur* and common knowledge. The judge further ordered the exclusion of plaintiff's expert testimony on the issue of liability, and noted that informed consent was the sole issue to be tried.

On October 27, 1995, the judge entered an order compelling plaintiff to provide fully responsive and more specific answers to various interrogatories submitted by Dr. Chung–Loy. In February 1996, the judge, following a case management conference, ordered that Dr. Chung–Loy appear for deposition and that discovery be completed within thirty days of January 29, 1996.

On March 18, 1996, the judge entered another case management order directing that: (1) defendant's expert, Dr. James Chandler, appear for deposition; (2) plaintiff submit on or before April 8, 1996, any expert report responding only to Chandler's report, or be barred from thereafter serving a responsive report; (3) plaintiff's expert be produced for deposition between April 8 and 15, 1996, or be deposed during trial; (4) trial begin on April 15, 1996;

and (5) videotaped depositions be taken of any witness unavailable for trial. Again, plaintiff failed to submit an expert's report.

Dr. Chung–Loy's counsel requested that plaintiff pay $583.10 for Chandler's deposition taken by plaintiff on March 7, 1996. Plaintiff refused to pay or respond to the request.

Trial commenced on April 30, 1996. Defendants David M. Rosenheck, M.D., Marc M. Wolfman, M.D., and John F. Kennedy Medical Center did not appear and were not represented at trial because they were not involved in the informed consent issue.

The evidence presented at trial showed that in September 1990, plaintiff began experiencing stomach problems and lost approximately sixty pounds. He was working as an independent engineering consultant at the time. On Christmas Eve 1990, he went to the Kennedy Medical Center complaining of severe nausea, vomiting, and a lack of appetite. He was treated and released.

Plaintiff's stomach problems increased over the next few months. He became dehydrated, weak, and his stomach began to spasm even though it felt constantly bloated. He had difficulty sleeping for long periods of time and could not work or do any other activity. On April 2, 1991, plaintiff was admitted to Kennedy Medical Center. He had not eaten for five days. Defendant Wolfman conducted a series of tests as did defendant Rosenheck. Dr. Rosenheck concluded that plaintiff was suffering from perforations in his stomach and referred plaintiff to Dr. Chung–Loy, a surgeon.

After reviewing plaintiff's x-rays, Dr. Chung–Loy concluded that plaintiff was not suffering from perforations of his stomach. He conducted further tests and concluded that plaintiff had an obstruction in his small intestine and recommended surgery to correct the condition. Plaintiff signed a consent form on April 5,

1991, which authorized defendant to treat an "INTESTINAL OBSTRUCTION" and provided in part: [2]

2. The procedure(s) necessary to treat my condition (has, have) been explained to me by Dr. CHUNG–LOY and I understand the nature of the procedure to be: (description of the procedure(s) in laymen's terms) EXPLORATORY LAPAROTOMY.

3. I have been made aware that there are common risks and possible complications of the proposed procedure as well as risks and consequences of *not* having the proposed procedure. I understand that there may be alternative treatments, and have been given the opportunity to discuss these with Dr. CHUNG–LOY.

4. I understand that the explanation given to me by my doctor is not exhaustive and that other, more remote risks and consequences may arise. I do not request any further explanation of these risks.

5. I agree that if during the course of the operation additional or different procedure(s) than those set forth in paragraph 2 are necessary due to the urgency of the condition, I authorize that such procedures be done, except:

[Left Blank]

6. I have received no guarantees as to the results of the planned procedure(s).

. . . .

11. CROSS OUT AND INITIAL ANY OF THE ABOVE PARAGRAPHS WHICH YOU DO NOT AGREE WITH.

12. I have read this document, or this document has been read to me in its entirety. I fully understand it and all blank spaces have been either completed or crossed off by me prior to my signing.

Dr. Chung–Loy signed the following statement at the bottom of the consent form:

I have personally explained to the patient and/or the patient's authorized representative, the information contained in this consent.

Dr. Chung–Loy and a nurse were present when plaintiff signed the consent form. No one explained the form to plaintiff nor did he read the form before signing it. Dr. Chung–Loy gave him only ten minutes to decide if he wanted the surgery and never informed him that this was a life-threatening situation. Plaintiff, admitted however, that Dr. Chung–Loy informed him just prior to the surgery that this was a serious condition.

---

[2] The consent form was typed with various blanks filled in by hand. We have underlined the filled in spaces.

Dr. Chung–Loy was called to testify in plaintiff's case. He stated that after explaining the proposed surgery to plaintiff, he recommended that plaintiff have an exploratory laparotomy to determine the inner condition of his stomach. He informed plaintiff that surgery was necessary because the obstruction in his intestines was a potentially life-threatening condition and that without surgery his intestines would rupture and he would die. He said that surgery was the only option to correct plaintiff's condition, but that there were potential risks and complications to the surgery. Dr. Chung–Loy stated that he explained all of the risks, including the risk of developing a hernia to plaintiff before the first operation.

It later developed, however, that Dr. Chung–Loy informed plaintiff about the risk of hernia after the surgery when plaintiff became upset and tried lifting a nightstand to throw it at his roommate. The following colloquy occurred outside the presence of the jury:

THE COURT: Did you talk about hernia to the plaintiff before the first operation?

THE WITNESS: Not relating to the surgery, sir.

THE COURT: Is it true that the first time the subject matter came up was at this time after the first operation when you got this call [about plaintiff trying to throw the nightstand]?

THE WITNESS: Yes, sir.

THE COURT: Just tell me what you and he spoke about at that time.

THE WITNESS: Well, after I did initial assessment to make sure that this [lifting the nightstand] wasn't a life threatening problem that Mr. Posta was going through, I told him he cannot lift up the night table because if he does he can break his stitches he will definitely get a hernia. I told him that he cannot do any heavy lifting and pulling because that will break his wound open.

Back in the presence of the jury, Dr. Chung–Loy stated that he examined plaintiff shortly after the first surgery. As a result of the nightstand incident, Dr. Chung–Loy instructed plaintiff not to lift the nightstand because he had just had abdominal surgery two hours before and lifting heavy objects could rip his sutures and he could develop a hernia.

Plaintiff's condition improved and he was discharged on April 19, 1991. During the next month, plaintiff had some nausea and

vomiting, so he visited Dr. Rosenheck twice who treated him with medication. Plaintiff's symptoms continued, however. Eventually, he was admitted to the Kennedy Medical Center on May 23, 1991. Plaintiff claimed that his symptoms were worse than before the first surgery. The nurse's notes indicated that plaintiff was having difficulty eating and drinking and that he was experiencing constant nausea and vomiting. Plaintiff was seen by Dr. Wolfman who conducted several tests.

Dr. Chung–Loy had been on vacation and did not examine plaintiff until May 29. He concluded that plaintiff was suffering from a partial intestinal obstruction near the area of the previous surgery and recommended a surgical procedure called a bilateral truchan vagotomy gastrojejunostomy. He drew a diagram to explain the operation to plaintiff. Plaintiff, however, denied that Dr. Chung–Loy ever explained the risks associated with this surgery to him or that he had any other options. Further, plaintiff stated that Dr. Chung–Loy never told him what he would do if during the operation the doctor found it was not necessary to perform the operation as described.

Dr. Chung–Loy claimed that he discussed the risks of the operation with plaintiff, telling him about the common risks and potential complications such as bleeding, infection, lung, heart, and kidney problems. The doctor did not, however, discuss the risk of a hernia.

Plaintiff signed a consent form for the second operation on May 30, 1991. The form authorized Dr. Chung–Loy to treat a "PARTIAL INTESTINAL OBSTRUCTION" and provided in part:

2. The procedure(s) necessary to treat my condition (has, have) been explained to me by Dr. CHUNG–LOY and 1 understand the nature of the procedure to be: (description of the procedure(s) in laymen's terms) BILATERAL TRUCHAN VAGOTOMY, GASTROJEJUNOSTOMY.

3. I have been made aware that there are common risks and possible complications of the proposed procedure as well as risks and consequences of *not* having the proposed procedure. I understand that there may be alternative treatments, and have been given the opportunity to discuss these with Dr. CHUNG–LOY.

4. I understand that the explanation given to me by my doctor is not exhaustive and that other, more remote risks and consequences may arise. I do not request any further explanation of these risks.

5. I agree that if during the course of the operation additional or different procedure(s) than those set forth in paragraph 2 are necessary due to the urgency of the condition, I authorize that such procedures be done, except: [Left Blank]

6. I have received no guarantees as to the results of the planned procedure(s).

. . . .

11. CROSS OUT AND INITIAL ANY OF THE ABOVE PARAGRAPHS WHICH YOU DO NOT AGREE WITH.

12. I have read this document, or this document has been read to me in its entirety. I fully understand it and all blank spaces have been either completed or crossed off by me prior to my signing.

The second operation was performed on May 31, 1991. During surgery, Dr. Chung–Loy determined that it was not necessary to perform a gastrojejunostomy because he was able to separate various adhesions in plaintiff's intestines. Dr. Chung–Loy concluded that surgery was the only medical option for the treatment of the adhesions. After the operation, Dr. Chung–Loy explained to plaintiff that he did not have to conduct the procedure as originally proposed.

Plaintiff was discharged from the hospital on June 9, 1991, with instructions to eat a low fat, low salt, high fiber diet and to return in two weeks. He claimed that at the time he was discharged, the wound was beginning to come apart and was bleeding. Two weeks later, plaintiff returned to see Dr. Chung–Loy. Plaintiff's stomach wall had started to protrude through the opening, resulting in a bulge. Dr. Chung–Loy did not find a bulge in plaintiff's stomach. He recalled that plaintiff told him that he had heard a popping sound one day while having a bowel movement, but that plaintiff had no associated pain after the popping sound. Dr. Chung–Loy stated that plaintiff's scar was in the same condition after both surgeries because he had cut through the scar from the first operation when he performed the second operation.

Nearly a year later, on March 26, 1992, plaintiff visited the Veterans Administration Hospital in Lyons complaining about a

"bulge" in his stomach. Dr. Ahamad Najme, the head of surgery at the hospital, examined plaintiff. Dr. Najme testified out of the presence of the jury that plaintiff had developed a ventral incisional hernia which may result from a variety of causes. He explained that some people were predisposed to developing a hernia and that others might develop a hernia from increased abdominal pressure arising from activities such as lifting heavy items. He also noted that any increase in intra-abdominal pressure may cause separation of the fascia and a resulting hernia. Dr. Najme, was however, unable to determine what caused plaintiff's hernia.

The following year, plaintiff began to have more discomfort and noticed that the bulge in his stomach was larger. He visited the Veteran's Administrative Hospital where on June 9, 1993, Dr. Najme performed surgery to correct plaintiff's incisional hernia by placing a mesh screen inside plaintiff's stomach.

Plaintiff stated that he would not have had either the first or second surgery had he been informed that there was a possibility of suffering a hernia from those operations or that a mesh screen would be permanently inserted in his stomach to repair his hernia. Plaintiff also stated that he would not have had the second surgery had he known Dr. Chung–Loy was going to perform a different procedure than explained and diagramed or had he known that he would have sustained such a large scar. On cross-examination, however, plaintiff admitted that had he known that he would die if his condition were left untreated, he may have considered the risk of a small hernia as being acceptable.

Dr. Chung–Loy explained that there was a two percent to twelve percent risk of developing a hernia under normal circumstances following both the first and second operation. He further stated that he was not surprised plaintiff developed a hernia because plaintiff gained substantial weight after each operation.

Plaintiff attempted to call defendant's expert, Dr. Chandler, as part of his case. Dr. Chung–Loy objected because plaintiff had not named Dr. Chandler as a witness or served him. Further, Dr. Chandler had never even examined plaintiff nor had he previously

rendered an opinion on the cause of plaintiff's hernia. The judge sustained the objection, but allowed Dr. Chandler to testify out of the presence of the jury in order to create a record. Dr. Chandler stated that there were many causes of abdominal hernia, such as obesity, diabetes, a strain, stretch, or other muscular activity. He also stated that a hernia could be caused by an operation because that procedure weakened the area. The judge concluded that Dr. Chandler's testimony fell short of establishing causation between the operation and the hernia and continued to exclude Dr. Chandler's testimony.

At the close of plaintiff's case, Dr. Chung–Loy moved for judgment at trial. He argued that plaintiff had failed to prove an informed consent case because no reasonable person would have refused the surgeries performed given their medical necessity and the potential life-threatening situation that existed. Further, Dr. Chung–Loy argued that plaintiff had failed to prove causation or damages because he was unable to show that any injury, specifically, a hernia was medically related to the surgeries performed.

The trial judge agreed. He explained that although under *Largey v. Rothman,* 110 *N.J.* 204, 540 *A.2d* 504 (1988), expert testimony was no longer required in an informed consent case in order to establish either the medical community standard for disclosure or whether a physician failed to meet that standard, expert testimony was still needed with regard to other required proofs. The judge concluded that plaintiff had failed to provide sufficient proof that the failure to disclose was a proximate cause in producing plaintiff's ultimate injuries or condition. On May 21, 1996, the trial judge filed an order memorializing his decision to dismiss plaintiff's complaint against Dr. Chung–Loy with prejudice.

Plaintiff moved for reconsideration and submitted a two-paragraph expert report of Bertram Levinstone, M.D., dated May 17, 1996. In this report, Dr. Levinstone stated:

It is my opinion, after review of these documents [plaintiff's medical reports after all three surgeries], and based upon reasonable medical certainty, that the incision-

al hernia which was found and repaired in July 1993, occurred in the incision line of the two previous operations and was a direct result of weakness of the abdominal wall following the second operation.

The judge concluded that this evidence was not new and could have been available at trial. He found that plaintiff failed to establish any grounds for relief from a judgment under *R.* 4:50–1 and denied the motion. In addition, the judge found that Dr. Levinstone's report was a net opinion which would be inadmissible at trial, in any event.

In June 1990, plaintiff again moved for reconsideration, submitting a second report by Dr. Levinstone. This time, Dr. Levinstone opined:

As noted in the previous report from this office, based on reasonable medical certainty, the incisional hernia found at operation on June 9, 1993, was due to the operation of May 31, 1991, and occurred in the line of incision of that operation. It was noted that the surgeon elected to use a continuous suture of absorbable material for closure of the fascia, which has much less tensile strength and is weakened by the process of absorption. In addition, the use of a continuous suture jeopardizes the entire suture line, if there is any defect along the suture, in contrast to a single area of deficiency in the case of failure of an individual or interrupted suture. Within the bounds of reasonable medical probability, this was a likely proximate cause for the development of incisional hernia, which the plaintiff noted to be present after the operation and during the hospital stay, when the wound opened and discharged bloody material. As a consequence, additional surgery was necessary for repair of this incisional hernia with Marlex mesh in 1993.

In response to plaintiff's motion, Dr. Chung–Loy cross-moved for an order compelling plaintiff to pay the $583.10 deposition fee of his expert, Dr. James Chandler, for the deposition conducted by plaintiff on March 7, 1996. Plaintiff's counsel objected to the amount of Dr. Chandler's fee and claimed that Chandler's fee should have been $291.60. On July 12, 1996, the trial judge granted defendant's cross-motion on the papers and ordered that plaintiff pay Dr. Chandler's $583.10 fee within seven days.

On July 22, 1996, notwithstanding his second motion for reconsideration filed in the trial court, plaintiff filed a notice of appeal from the dismissal of his complaint and from the judge's orders dated June 6, 1996, and December 2, 1994. Plaintiff also moved for a stay, which we denied on August 28, 1996.

On July 26, 1996, the trial judge denied plaintiff's second motion for reconsideration. The judge reiterated his view that even though plaintiff did not need expert testimony with regard to informed consent, expert testimony was "essential" to the question of causation. The judge noted that plaintiff did not present an expert's report in which a physician opined that there was a causal connection between the injury and Dr. Chung–Loy's operations until long after the trial. The judge concluded that it was "too late" to introduce such evidence.

## II

Plaintiff contends that the case management order dated March 18, 1996, was arbitrary, capricious, unreasonable, and a gross abuse of judicial discretion. He claims that he had a right to take the deposition of the defendant before submitting a medical expert witness report. Plaintiff argues that he had insufficient time to prepare for trial because he had only twenty one days to obtain an expert to respond to Chandler's opinions and only two weeks to prepare for trial after he received the deposition transcripts of Drs. Chung–Loy and Chandler.

*R.* 4:10–4 governs the sequence and timing of discovery. *R.* 4:10–4 reads:

> Unless the court upon motion, for the convenience of parties and witnesses and in the interest of justice, orders otherwise, methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not, of itself, operate to delay any other party's discovery.

The comment to this rule notes that "this rule should eliminate the claim heretofore made by some practitioners that the party first serving a notice of the taking of a deposition has the right to complete all his depositions before any other party may commence taking his depositions." Pressler, *Current N.J. Court Rules,* comment on *R.* 4:10–4 (1997).

Plaintiff argues that *Dick v. Atlantic City Med. Ctr.,* 173 *N.J.Super.* 561, 414 *A.*2d 995 (Law Div.1980) supports his argument. In *Dick,* also a medical malpractice case, the court used *R.*

4:10–4 to reject defendant's application that he was entitled to plaintiff's expert report before preparing for a deposition. *Id.* at 565, 414 *A.*2d 995. The court held that even though it was often "helpful" to adhere to an orderly progression of events during discovery, such a course was "not mandated," especially in medical malpractice actions which were "not noted for the ease in which a case against a doctor or hospital can be developed." *Ibid.*

We do not read *Dick* to support plaintiff's argument. That case does not establish a "right" for a plaintiff in a medical malpractice action to always obtain discovery of the defendant before preparing his or her case. Rather, it stands for the proposition that there is no set order of discovery without a specific court order.

Here, the judge granted plaintiff sufficient time to respond to defendant's expert, whose deposition was taken on March 7, 1996. Plaintiff had until April 8, 1996, to respond to defendant's expert or be barred from thereafter serving any responsive report. Further, if plaintiff produced an expert, the expert's deposition was to be taken by April 15, 1996, the day scheduled for trial. Plaintiff did not produce an expert prior to trial, which commenced on April 30, 1996. We note that within two weeks after plaintiff's complaint was dismissed, he produced an expert. This case was over three years old. Plaintiff had sufficient time to produce an expert. At some point, the case must proceed to trial. We find no abuse of discretion in the time constraints set by the trial judge.

### III

Plaintiff contends that the trial judge's order dated December 2, 1994, granting partial summary judgment to defendants on the issues of *res ipsa loquitur* and common knowledge was arbitrary, capricious, and unreasonable. He argues that there was no hearing held and, consequently, that the judge made no finding of fact and conclusions of law. Further, plaintiff urges that the photos taken following the surgery which depicted bulges and ugly scars was evidence of negligence.

■ Recently, we explained the principles of *res ipsa loquitur* and common knowledge:

> The *res ipsa loquitur* doctrine applies "where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect."
>
> [*Kelly v. Berlin,* 300 *N.J.Super.* 256, 265, 692 *A.*2d 552 (App.Div.1997) 265 (quoting *Buckelew v. Grossbard,* 87 *N.J.* 512, 525, 435 *A.*2d 1150 (1981)).]

Further we added:

> The common knowledge doctrine applies when "[t]he facts of a given case [are] such that the common knowledge and experience possessed by lay[persons] ... enable a jury to conclude, without expert testimony, in a malpractice action as in any other negligence action that a duty of care has been breached." ... "The basic postulate for the application of the doctrine therefore is that the issue of negligence is not related to technical matters peculiarly within the knowledge of medical ... practitioners."
>
> [*Kelly, supra,* 300 *N.J.Super.* at 265, 692 *A.*2d 552 (quoting *Klimko v. Rose,* 84 *N.J.* 496, 503–04, 422 *A.*2d 418 (1980), and *Sanzari v. Rosenfeld,* 34 *N.J.* 128, 142, 167 *A.*2d 625 (1961)).]

We also explained that:

> In *res ipsa* cases, plaintiff need only prove his injury, and need not prove a standard of care or a specific act or omission. Ordinarily, the common knowledge doctrine is applied in a malpractice case after the plaintiff proves his injury and a causally related act or omission by the defendant.
>
> [*Kelly, supra,* 300 *N.J.Super.* at 266–67, 692 *A.*2d 552 (quoting *Sanzari, supra,* 34 *N.J.* at 141, 167 *A.*2d 625).]

■ Here, there was insufficient evidence to apply either doctrine. With regard to the *res ipsa loquitur* doctrine, the development of a hernia almost one year after the second operation does not bespeak negligence. Moreover, even if plaintiff could overcome that requirement, *res ipsa loquitur* is not warranted because plaintiff presented no evidence, expert or otherwise, that tended to exclude other possible causes of his hernia or to show that his own actions did not cause or contribute to development of that hernia.

■ Regarding the common knowledge doctrine, lay persons do not have the knowledge or skill to analyze plaintiff's injury or Dr. Chung–Loy's actions. It is not within the common knowledge of lay jurors to determine whether Dr. Chung–Loy's treatment of plaintiff constituted a deviation from the accepted surgical stan-

dards of care for the operations performed. Moreover, without expert testimony people of average intelligence and ordinary experience could not determine the cause of plaintiff's hernia.

The trial judge correctly concluded that plaintiff did not satisfy the requirements for either *res ipsa loquitur* or common knowledge.

## IV

Plaintiff contends in Points III and IV of his brief that the trial judge erred by granting an involuntary dismissal at the end of his case. Plaintiff argues that he presented ample evidence to prove the absence of informed consent and causation.

In determining whether to grant a motion for dismissal at the close of plaintiff's case under *R.* 4:37–2(b), the judge must accept as true all the evidence which supports the claim of the party opposing the motion and must accord that party the benefit of all legitimate inferences flowing from the proofs presented. *Lanzet v. Greenberg*, 126 *N.J.* 168, 174, 594 *A.2d* 1309 (1991); *Dolson v. Anastasia*, 55 *N.J.* 2, 5, 258 *A.2d* 706 (1969). The issue essentially is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 536, 666 *A.2d* 146 (1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 251–52, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)). An informed consent cause of action is grounded in negligence and is

> predicated on the duty of a physician to disclose to a patient such information as will enable the patient to make an evaluation of the nature of the treatment and of any attendant substantial risks, as well as of available options in the form of alternative therapies.
>
> [*Largey, supra,* 110 *N.J.* at 208, 540 *A.2d* 504.]

It is a plaintiff's burden to prove that the defendant failed to comply with the applicable standards for disclosure, and that such failure was a proximate cause of plaintiff's injuries. *Id.* at 215, 540 *A.2d* 504.

In *Largey,* the Supreme Court adopted the "prudent patient" standard, also known as the "materiality of risk" standard, to determine whether a doctor has complied with disclosure. *Id.* at 212–13, 540 *A.*2d 504. Under this standard, a physician must disclose all information material to a reasonably prudent patient's treatment decision. *Id.* at 211, 540 *A.*2d 504.

A risk would be deemed "material" when a reasonable patient, in what the physician knows or should know to be the patient's position, would be "likely to attach significance to the risk or cluster of risks" in deciding whether to forego the proposed therapy or to submit to it.

[*Id.* at 211–12, 540 *A.*2d 504 (quoting *Canterbury v. Spence,* 464 *F.*2d 772, 787 (D.C.Cir.), *cert. denied,* 409 *U.S.* 1064, 93 *S.Ct.* 560, 34 *L. Ed.*2d 518 (1972)).]

Here, Dr. Chung–Loy testified during plaintiff's case that there was between a two-percent to twelve-percent risk that plaintiff would develop a hernia after his surgeries. Thus, plaintiff presented evidence that the risk of hernia was one which was recognized as a risk within the medical community. Further, Dr. Chung–Loy's testimony established that he had advised plaintiff about the risk of hernia after the operation, but not before. Therefore, plaintiff established the lack of informed consent.

In addition to proving that Dr. Chung–Loy breached his duty to disclose, however, plaintiff must also prove causation. Plaintiff must show that the lack of informed consent proximately caused the surgery to have been performed and that the surgery performed caused his injuries. *See Grasser v. Kitzis,* 230 *N.J.Super.* 216, 221–22, 553 *A.*2d 346 (App.Div.1988).

Proximate cause due to the lack of informed consent is resolved by application of an objective standard. That is, plaintiff must show that " 'the prudent person in the patient's position would have decided differently if adequately informed.' " *Largey, supra,* 110 *N.J.* at 215, 540 *A.*2d 504 (quoting *Perna v. Pirozzi,* 92 *N.J.* 446, 460 n. 2, 457 *A.*2d 431 (1983)). "If adequate disclosure could reasonably be expected to have caused that [prudent] person to decline the treatment because of the revelation of the kind of risk or danger that resulted in harm, causation is shown, but otherwise not." *Largey, supra,* 110 *N.J.* at 216, 540 *A.*2d 504

(quoting *Canterbury, supra,* 464 *F.*2d at 791). Here, plaintiff would have established the first prong of causation had he demonstrated that a prudent person in plaintiff's position would have declined treatment had he been adequately informed of the two-percent to twelve-percent risk that resulted in a post-surgical hernia.

While the trial judge did not specifically address this issue, we are satisfied that plaintiff failed to sustain his burden of proof regarding causation as to the lack of informed consent. We are convinced that assuming all facts and inferences in plaintiff's favor, reasonable minds could not differ that if adequately informed of the hernia risk, the prudent person in plaintiff's position would have decided to have the two surgeries.

It was undisputed that when plaintiff was initially admitted to the hospital on April 2, 1991, he had not eaten for five days, had lost weight, and was nauseous and vomiting all of the time. In fact, plaintiff admitted that he was "essentially at the end of [his] rope." Plaintiff had an obstruction of his bowel, which the undisputed evidence established was life-threatening if left untreated surgically. Following the first operation, when plaintiff was admitted to the hospital on May 23, 1991, he was again experiencing nausea, vomiting and his symptoms were worse than before the first surgery. Further, it was not disputed that during the second surgery Dr. Chung–Loy found adhesions in the area of his first surgery which could only be removed surgically. We are convinced that the evidence was so one-sided that no reasonable jury could have determined that a reasonably prudent patient would have refused to consent to either surgery even if informed of the potential risks of developing a hernia, of undergoing another operation to repair that hernia, and of having a mesh screen permanently implanted during the hernia operation.

Even if there was sufficient evidence for the jury to decide that a reasonably prudent patient would have withheld consent had he been properly informed, plaintiff was required to establish that his injury was caused by the medical procedure for

which the informed consent was inadequate. *Adamski v. Moss,* 271 *N.J.Super.* 513, 519, 638 *A.*2d 1360 (App.Div.1994); *Grasser, supra,* 230 *N.J.Super.* at 222, 553 *A.*2d 346; *Skripek v. Bergamo,* 200 *N.J.Super.* 620, 633–34, 491 *A.*2d 1336 (App.Div.), *certif. denied,* 102 *N.J.* 303, 508 *A.*2d 189 (1985). The judge dismissed this case after concluding that plaintiff failed to produce any reliable testimony that his hernia was proximately caused by the operations performed by defendant or that the operations were a substantial factor in causing the hernia. We agree.

It was undisputed that plaintiff had a two-percent to twelve-percent risk of developing a hernia after the two surgeries performed by defendant. It was also undisputed that almost one year after the second surgery, plaintiff was diagnosed with a ventral incisional hernia, i.e., a hernia that developed in the area of the prior surgeries. Dr. Najme and Dr. Chandler, however, stated that hernias were caused by a variety of events, including predisposition, obesity, diabetes, muscular activity as well as surgery. Moreover, there was no testimony that plaintiff's particular hernia was caused by the operations performed by defendant or that those operations were a substantial factor in causing the hernia.

Without expert testimony, plaintiff could not prove that his hernia was caused by the medical procedure for which the informed consent was inadequate. A jury may not speculate in an area where laypersons could not be expected to have sufficient knowledge or experience. *See Germann v. Matriss,* 55 *N.J.* 193, 208, 260 *A.*2d 825 (1970); *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982).

Moreover, even if the photographs showing plaintiff's hernia had been admitted, such photos merely showed the plaintiff's condition. That condition was not evidence of the cause of plaintiff's hernia. Consequently, any error in the exclusion of the photograph was harmless. *R.* 2:10–2.

Plaintiff also argues that Dr. Chung–Loy was negligent for failing to perform a bilateral truchan vagotomy gastrojejunostomy as proposed and diagramed prior to the second surgery. We reject this argument. It was undisputed that defendant performed a "lesser" operation on plaintiff instead of the gastrojejunostomy, and that the operation performed was medically necessary to cure plaintiff of his symptoms.

Viewing the evidence in the light most favorable to plaintiff, we are satisfied that plaintiff failed to present a *prima facie* case that his hernia was proximately caused by the operations performed by Dr. Chung–Loy. The judge did not err in granting judgment in favor of Dr. Chung–Loy.

## V

Plaintiff contends that the trial judge erred by denying his two motions for reconsideration. We note that plaintiff does not take issue with the actual reasons set forth by the trial judge, i.e., net opinion and delay of submitting report, in denying plaintiff's reconsideration motions to open the judgment. We need not address each of plaintiff's contentions under this point heading. Plaintiff's main argument centers on newly discovered evidence, the expert reports by Dr. Levinstone.

*R.* 4:50–1 allows the judge to:

> relieve a party … from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial … (d) the judgment or order is void; … or (f) any other reason justifying relief from operation of the judgment or order.

The motion for vacation of a judgment based on any one of those specified grounds should be granted sparingly, and is addressed to the sound discretion of the trial judge, whose determination will be left undisturbed unless it results from a clear abuse of discretion. *Housing Auth. v. Little*, 135 *N.J.* 274, 283–84, 639 *A.*2d 286 (1994).

R. 4:50–1, does however, make it clear that evidence justifying relief is evidence that could not have been discovered by due diligence in time to move for a new trial. Plaintiff had three years to prepare for trial and twenty one days to obtain an expert to support his case. He failed to do so. Nevertheless, within two weeks after the case was dismissed, plaintiff obtained a report from Dr. Levinstone. We are satisfied that newly discovered evidence does not include a post-trial realization of the inaccuracy of medical proofs upon which the plaintiff relied at trial, and the attempt to remedy the same. *See Aiello v. Myzie,* 88 *N.J.Super.* 187, 196–98, 211 *A.*2d 380 (App.Div.), *certif. denied,* 45 *N.J.* 594, 214 *A.*2d 30 (1965).

Plaintiff also argues that because his counsel mistakenly failed to present the appropriate expert testimony at trial, he should be granted relief. However, an attorney's error of law is not sufficient to relieve a party from a final judgment or order. *Hendricks v. A.J. Ross Co.,* 232 *N.J.Super.* 243, 248–49, 556 *A.*2d 1267 (App.Div.1989).

## VI

Plaintiff contends that the judge erred by not granting a mistrial and review on numerous occasions during trial, when plaintiff requested a mistrial after the judge ruled against him on various evidentiary objections. We have reviewed each of plaintiff's contentions and find that they are all clearly without merit. *R.* 2:11–3(e)(1)(E).

Affirmed.